John STRICK, Jr., Respondent,

v.

D. E. STUTSMAN, d/b/a Woody's Tow Service, Appellant.

No. WD 32164.

Missouri Court of Appeals,
Western District.

March 16, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied
May 4, 1982.

Application to Transfer Denied
June 14, 1982.

---

Sylvester Powell, Jr. of Heilbron & Powell, Kansas City, for appellant.

James C. Wirken and Sue K. Willman of Spradley & Wirken, A Professional Corp., Kansas City, for respondent.

Before CLARK, P. J., and MANFORD and KENNEDY, JJ.

MANFORD, Judge.

This is an action seeking recovery of damages to a diesel truck transmission upon the alleged negligent operation of the vehicle. Judgment was entered upon a jury award of $3,650.00. This appeal followed. The judgment is reversed.

The parties are hereinafter referred to by their party designation at trial. Appellant, D. E. Stutsman, d/b/a Woody's Tow Service, was original defendant. Respondent, John Strick, Jr., was original plaintiff. The sole point on this appeal is that the trial court erred in submitting a verdict-directing instruction upon the doctrine of res ipsa loquitur.

Plaintiff was the owner of a 1972 KW–Dart tractor which he had purchased in July, 1978. He had leased the tractor to one Tracy Watson, who was the sole operator of the tractor. Watson had driven the tractor and an empty trailer from Dallas, Texas, arriving in Kansas City, Missouri in the early morning hours of January 24, 1979. At 5:00 a. m. on this same date, Watson parked the tractor in a private parking lot, left the motor running, locked it and proceeded to go home, which was a short distance from where he parked the tractor.

The owner of the premises arrived at approximately 9:00 a. m., and observed the tractor, which was blocking about 40% of his parking lot area. He called the police.

The police found the tractor locked. After several hours of trying to find the owner of the tractor, the police called defendant at approximately 3:00 p. m. to have the tractor towed. The officer did not observe any physical damage to the outside of the tractor. One of defendant's employees, (who also testified concerning his experience and familiarity with this type of tractor) stated that after entry to the tractor cab was achieved, he drove the tractor to defendant's tow lot. This employee also testified that when he drove the tractor from where it was parked (by Watson), the transmission would not fully engage in certain gears, but that the main gear box and reverse gear were working properly.[1] This witness also testified that when he drove the tractor, the "forkshifts" and "sliding clutch" were working properly.

Later in the day, (approximately 5:30 p. m.) the tractor had not been claimed, so this same employee drove the tractor about ¾ of a mile to refuel it. At this time, he experienced some shifting problems with the transmission. The evidence established that the engines on these tractors are permitted to run continuously, particularly during the cold winter months. Watson returned to where he had parked the tractor, and after discovering it missing from where he had parked it, inquired of the police and was advised that it was at defendant's lot. Watson was unable to retrieve the tractor until 10:00 or 11:00 a. m. the following morning. When he arrived at defendant's lot, he found the tractor with the motor running. After paying defendant, but prior to driving the tractor from defendant's lot, Watson experienced considerable difficulty getting the transmission into gear. As he drove it away, he tried shifting it into various gears.

The evidence was disputed as to how far Watson drove the tractor, (plaintiff's testimony was 6–7 blocks—defendant's testimony placed the distance at 6–7 miles) but the transmission "locked" in gear 2–2. After this "locking", defendant was called and towed the tractor to Mid-West Kenworth. Examination revealed that the shift forks, sliding clutch and auxiliary transmission were broken. The service manager for Kenworth testified that service and maintenance on this type of transmission were important, but stated that he had no knowledge concerning the maintenance and repair history of this particular transmission. The service manager was called as a witness by plaintiff, and in addition to the foregoing testimony, stated that the damage found regarding this particular transmission could occur from *normal wear and tear, abuse, or in this particular case, high air pressure on the regulator.* In addition, he added that such damage could *arise if the driver did not know how to shift the*

---

1. The transmission on the tractor provided 16 forward gears and four reverse gears, the operation of which was accomplished by air pressure. The transmission included a "main box" and an "auxiliary". Air was supplied from air pressure tanks, which also supplied pressure for the braking system.

*gears,* and admitted *that this could occur with even the most experienced driver.* The remaining evidence revealed that there was no written or actual knowledge of problems with the transmission prior to this damage. A replacement transmission was placed in the tractor at a cost of $4,546.28. The evidence closed. Judgment was entered and this appeal followed.

The question posed to this court is whether or not the evidence supported submission of plaintiff's claim upon the doctrine of res ipsa loquitur. The court submitted the following instruction pursuant to MAI 31.-02(3):

### INSTRUCTION NO. 4

Your verdict must be for plaintiff if you believe:

First, defendant operated the tractor, and

Second, the tractor's transmission was damaged, and

Third, from the facts in evidence and the reasonable inferences therefrom, you find such occurrence was the direct result of defendant's negligence, and

Fourth, as a direct result of such negligence plaintiff sustained damage.

■ The principles underlying the application of the doctrine of res ipsa loquitur were articulated in *McCloskey v. Koplar,* 329 Mo. 527, 46 S.W.2d 557, 559 (Banc 1932), wherein the court held that "the doctrine res ipsa loquitur does not apply except when (a) the occurrence resulting in injury was such as does not ordinarily happen if those in charge use due care; (b) the instrumentalities involved were under the management and control of the defendant; (c) and the defendant possesses superior knowledge or means of information as to the cause of the occurrence." See also, *Carter v. Liberty Equipment Co., Inc.,* 611 S.W.2d 311 (Mo.App.1980).

■ In our courts, the doctrine is treated as a rule of circumstantial evidence whereby a submissible issue of negligence may arise through demonstration of an occurrence which, because of its character and

circumstances, permits a jury to draw a rebuttable inference that the cause of the occurrence does not usually exist absent negligence. *Hasemeier v. Smith,* 361 S.W.2d 697, 700 (Mo.banc 1962). A party seeking application and benefit of the doctrine *need not submit facts surrounding the occurrence which excludes every reasonable hypothesis except defendant's negligence, but* application of the doctrine *does require there be facts and circumstances from which one can conclude that, more often than not, an occurrence or accident of the type involved results from a failure to exercise reasonable care by the party in charge of the instrumentality. Walsh v. Phillips,* 399 S.W.2d 123, 128 (Mo.1966) and *Hall v. St. Louis Public Service Co.,* 248 S.W.2d 33 (Mo.App.1952). See also Restatement 2d Torts, § 328D (1966). It has been ruled that before the doctrine is applicable, there must be a showing by the party claiming its application that the party "must present more than a case of equal probabilities— one with liability and one without." *Bone v. General Motors Corporation,* 322 S.W.2d 916, 921 (Mo.1959). The doctrine and its application have been discussed in a more recent decision of our State Supreme Court, *City of Kennett v. Akers,* 564 S.W.2d 41, 45 (Mo.banc 1978) wherein the court held:

Falling objects have been fertile ground for the application of the res ipsa loquitur doctrine ever since a barrel of flour rolled out of a warehouse and fell on a passing pedestrian in *Byrne v. Boadle,* 2 H. & C. 722, 159 Eng.Rep. 299 (1863). Much has been written about the doctrine and the courts of various states have defined or explained it differently. In Missouri it is considered a rule of evidence. *Empiregas, Inc., of Noel v. Hoover Ball & Bearing Co.,* 507 S.W.2d 657 (Mo.1974), 58 Am.Jur.2d Negligence, sec. 475, at 48, and, if applicable to a given factual situation or event, *simply means* that *the happening of the event provides sufficient circumstantial evidence so as to allow, but not compel, the jury to infer from that evidence that the event happened because of the defend-*

ant's negligence and to so find. *McCloskey v. Koplar*, 329 Mo. 527, 46 S.W.2d 557, 559 (Banc 1932). *The event must be an unusual occurrence of a character which ordinarily results from negligence and from which, therefore, negligence is a reasonable inference.* (emphasis added)

Our courts have further ruled that whether the event or occurrence is the kind of unusual event or occurrence which ordinarily results from negligence is a determination to be made judicially and to be arrived at by judges applying their common experience of life to the event giving rise to the suit and deciding whether the criteria for application of the doctrine of res ipsa loquitur has been satisfied. *City of Kennett, supra.* Upon review, *an appellate court is prohibited from weighing the evidence* in considering whether the evidence is sufficient to permit application of the doctrine, but an appellate court *may determine whether that evidence is substantial and may point to inferences that may be drawn from that evidence. Gateway Chemical Co. v. Groves*, 370 S.W.2d 302, 305, 306 (Mo.1963). As regards circumstantial evidence, our courts function to determine whether certain circumstances warrant an inference where application of the doctrine is sought. Determination of the application of the doctrine is a matter of law left to the exclusive province of our courts and is not a matter left for determination by a jury as factfinder. *Cannamore v. Bi-State Development Agency*, 484 S.W.2d 308, 310 (Mo. banc 1972); *Parlow v. Dan Hamm Drayage Co.*, 391 S.W.2d 315, 326 (Mo.1965) and *Long v. Spanish Lake Service, Inc.*, 507 S.W.2d 935, 938 (Mo.App.1974).

It has been observed by our courts that "the essence of the res ipsa doctrine is the occurrence of an injury or damage causing the event which permits the inference that the occurrence was occasioned by the negligence of the party who is in control of the instrumentality which precipitated the occurrence and who has superior knowledge or means of knowledge of the

cause." *Warriner v. Holmeswood Baptist Church*, 548 S.W.2d 259, 261 (Mo.App.1977). No presumption of liability will be drawn from the fact of an accident and resulting injury. It is the character or nature of the accident, rather than the fact of the accident, which determines the application of the doctrine. *Scott v. Club Exchange Corporation*, 560 S.W.2d 289, 293 (Mo.App. 1977). Our courts have adhered to the view expressed by Prosser that "as long as the conclusion is a matter of mere speculation or conjecture, or where the probabilities are at best evenly balanced between negligence and its absence, it becomes the duty of the court to direct the jury that the burden of proof has not been sustained." *Prosser, Law of Torts*, § 39 (4th ed. 1971), pp. 211–12.

The instant record has been reviewed against the foregoing authority. That review leads to the conclusion that the nature and character of the transmission breakdown did not permit an inference of negligence to be drawn. *Cannamore, supra.* Particular evidentiary matters which support that conclusion are as follows. The testimony of the service manager for Kenworth, who testified for plaintiff, supports the view that the breakdown of the transmission was at least as likely to have been caused by factors antecedent to the operation of the tractor by defendant's employee. (i.e., normal wear and tear, high pressure on the regulator and driver operation, including both inexperienced and experienced drivers)

In addition to the testimony of the service manager, Watson, the sole operator of the tractor, estimated he drove the tractor approximately 20,000 miles per month. On this appeal, plaintiff emphasizes records (travel logs, etc., but no service or maintenance records) maintained by Riss International (lessee of the tractor) showing that 9,876 miles in the period from September 18, 1978 to January 23, 1979 put the tractor's use, in miles, in question.[2] This show-

---

**2.** The record reveals that during the time period involved, Riss International was the exclu-

sive lessee of the tractor. There was no evi-

ing and the supporting argument by plaintiff on this point fail to persuade this court because assuming the accuracy of the latter mileage figure (9,876 miles), neither the trial court nor this court has been apprised of the total miles put on the transmission prior to the above specified time. It follows absent that evidence that normal wear and tear and/or previous abuse by both experienced or inexperienced drivers could not be ruled out as causative factors of damage to the transmission. The evidence as to the knowledge and experience of defendant's driver mitigates against an inference of probable driver negligence.

Plaintiff argues that the testimony of his driver that the latter regularly maintained the vehicle and never experienced problems with the transmission from the date of purchase by plaintiff (July, 1978) until the present incident, creates an inference of probable negligence. This court cannot agree with plaintiff's conclusion. In *Long* at 938, the court declared:

Neither common knowledge nor experience leads us to conclude plaintiffs' sewer would not have overflowed but for defendant's negligence in some form. Here the overflow could reasonably be attributed to any person having access to defendant's sewer line. Accordingly, we hold plaintiffs have not shown the essential elements of control and probability essential to a res ipsa case. See *Charlton v. Lovelace*, 351 Mo. 364, 173 S.W.2d 13[4] (1943), holding 'where there are two or more persons or causes which might have produced the injury, some, but not all, of which were under the control of defendant or for which he was legally responsible, plaintiff, in order to invoke the doctrine, must exclude the operation of those causes for which defendant is under no legal obligation.'

The difficulty of inferring the probability of negligence in those instances where there exists potential consecutive causative factors is illustrated in a case from our sister state, Iowa, wherein the court, while attempting to resolve a dispute by a munici-

pality against two construction companies for amounts paid by the municipality to a third contractor to remedy a sewer system defect, affirmed the trial court's refusal to submit the case to the jury upon res ipsa loquitur and declared:

Plaintiff's showing does not indicate it was more probable the accident occurred by reason of either defendant's negligence than by reason of the town engineer's plans. It is at least as likely the accident resulted because the engineer improperly designed the lift station to be constructed too close to the manhole, or provided that it be installed in an improper fashion, or without regard to existing water conditions. The trial court properly refused to submit the doctrine for this reason. *Town of Reasnor v. Pyland Const. Co.*, 229 N.W.2d 269, 273 (Iowa 1975).

For a factually analogous case, see *American Village Corp. v. Springfield Lbr. & Bldg. Sup.*, 269 Or. 41, 522 P.2d 891 (1974) wherein the action arose for recovery of damages caused to a forklift allegedly as a result of the negligence of defendant's employee. The Oregon Supreme Court declared at 892:

The plaintiff alleged in its complaint that Haynes let the clutch out too fast; that he lacked training in operating a forklift; and that he was 'in a hurry and did not use proper driving habits.' In a second count, the plaintiff relied on the doctrine of *res ipsa loquitur*.

There was no evidence to sustain any of plaintiff's specific allegations of negligence. On the contrary, the evidence showed that Haynes had extensive experience in operating all makes of forklifts, that he was not in a hurry because he did not 'mind working overtime' and that was the reason the company selected him to deliver the plywood.

Neither do we feel that the facts justify the application of the doctrine of *res ipsa loquitur*. The incident occurred in September, 1971. The forklift, which

---

dence of other business or transport use of the tractor.

was a 1968 model, had been purchased used by plaintiff in June, 1970. In determining whether *res ipsa loquitur* applies, the question is whether it is reasonable to infer that the breakdown would not have happened had the defendant Haynes not been negligent. If the trial judge concludes that the probabilities of a nonnegligent cause of the breakdown are as great or greater than the probabilities of a negligent cause, he should withdraw the case from the jury. (citations omitted)

We cannot conclude that the breakdown of the forklift is an incident which ordinarily would not have occurred in the absence of negligence. All mechanical objects suffer breakdowns every day without someone being negligent. It is true that plaintiff adduced testimony that the malfunction was caused by a breaking and not by wear and tear. However, it is equally probable that prior usage could have initiated the damage or even that the parts themselves were defective.

This court finds the principles announced by our sister courts in *City of Reasnor* and *American Village Corporation* both persuasive and in harmony with the interpretation and determination of whether and when the doctrine of *res ipsa loquitur* is held applicable. The reasoning of those decisions is adopted herein.

This court concludes that the evidence upon the instant record was not sufficient to give rise to an inference of negligence so as to allow or permit the submission of the doctrine of res ipsa loquitur by way of a verdict-directing instruction. The evidence reveals that the transmission breakdown could have occurred equally from previous wear and tear, high pressure on the regulator or driver abuse, both by an experienced as well as an inexperienced driver or operator. Plaintiff's evidence of regular or routine service, coupled with no prior difficulty with the transmission, fails to amount to substantial evidence which warrants application of the doctrine. The evidence reveals that the damage to the transmission could have arisen equally from varied sources and the evidence *fails* to meet the requirement *that there be facts and circumstances from which one can conclude that more often than not, an occurrence or accident of the type involved results from a failure to exercise reasonable care by the party in charge of the instrumentality. Walsh, supra.* In addition, the evidence fails to meet the requirement that there must be present more than a case of equal probabilities. *Bone, supra.* The evidence further fails to meet the requirement that "the event must be an unusual occurrence of a character which ordinarily results from negligence and from which therefore negligence is a reasonable inference." *City of Kennett, supra* at 45.

The trial court erred in its submission of this cause upon the doctrine of res ipsa loquitur because the evidence fails to support such submission. It is obvious from the record that the parties submitted the entirety of their evidence and no purpose would be served by a retrial of the issues. For the reasons set forth herein, the judgment is in all respects reversed.

All concur.