Larry Neal JONES, Appellant,

v.

Daniel Patrick WAHLIC, Respondent.

No. 46403.

Missouri Court of Appeals,
Eastern District,
Division Two.

March 20, 1984.

Mastorakos, Dunne & Hennerich, Homer N. Mastorakos, Paul A. Hennerich, III, Chesterfield, for appellant.

Wuestling & James, William F. James, St. Louis, for respondent.

CRIST, Presiding Judge.

Plaintiff brought an action for personal injuries sustained when the motorcycle he was operating collided with a Jeep operated by defendant. Defendant counterclaimed for the damage caused to the Jeep by the collision. The jury found for defendant on plaintiff's claim and awarded defendant $250.00 on his counterclaim. We affirm in part and reverse in part.

Plaintiff, operating his motorcycle, was following defendant west on Gravois Road. As both vehicles approached a "T" intersection of Gravois and New Smizer Mill Road, both drivers attempted to turn right on New Smizer Mill. The right front of the Jeep collided with the left front of the motorcycle.

Plaintiff's first assertion of error involves the trial court's refusal to admit a statement made by plaintiff to a police officer approximately ten minutes after the accident. As the officer arrived on the scene, he observed plaintiff and the motorcycle lying on the ground. The officer asked plaintiff what had happened. After the trial court sustained defendant's hearsay objection, plaintiff made an offer of proof that the policeman would testify plaintiff told him he was struck on the left side by the Jeep while making the right turn.

Plaintiff contends his statement to the police officer should have been admitted as part of the "res gestae" of the accident. Historically, the phrase "res gestae" justified the admission of declarations falling into what are now recognized as four distinct exceptions to the hearsay rule: (1) declarations of present bodily condition; (2) declarations of present mental states or emotions; (3) excited utterances; and (4) declarations of present sense impression. McCormick on Evidence, § 288, p. 686 (2d ed. 1972). Given these four possible meanings for the phrase, its vagueness and imprecision are apparent.

> The marvelous capacity of a Latin phrase to serve as a substitute for reasoning, and the confusion of thought inevitably accompanying the use of inaccurate terminology, are nowhere better illustrated than in the decisions dealing with the admissibility of evidence as "res gestae." It is probable that this troublesome expression owes its existence and persistence in our law of evidence to an inclination of judges and lawyers to avoid the toilsome exertion of exact analysis and precise thinking.

Morgan, A Suggested Classification of Utterances Admissible as Res Gestae, 31 Yale L.J. 229 (1922). To the extent more precise terminology may be employed, the phrase "res gestae" should be avoided.

We therefore view plaintiff's first point as an attempt to introduce his statement to the police officer as an excited utterance. See generally, Annot., Admissibility as Res Gestae of Statements or Exclamations Relating to Cause of, or Responsibility for, Motor Vehicle Accidents, 53 A.L.R.2d 1245 (1957). To determine whether a statement is admissible as an excited utterance, there must be a startling or unusual occurrence sufficient to overcome normal reflection and the ensuing declaration must be a spontaneous reaction to the startling event. *Wren v. St. Louis Public Service Co.*, 333 S.W.2d 92, 94–95 (Mo. 1960). The crucial factor in determining

the admissibility of an excited utterance is whether under all the circumstances the statement is a spontaneous by-product of the event.

■ The decision whether a declaration is sufficiently spontaneous to be admitted into evidence as an excited utterance rests in the discretion of the trial court. *Kuzuf v. Gebhardt,* 602 S.W.2d 446, 452 (Mo. banc 1980). The party offering the declaration must show it comes within the exception. *Wren,* 333 S.W.2d at 94. Among the factors to be considered are the time between the startling event and the declaration, whether the declaration is in response to a question, whether the declaration is self-serving, and the declarant's physical and mental condition at the time of the declaration. While no one factor necessarily results in automatic exclusion, all should be considered in determining whether the declaration was the result of reflective thought.

■ Plaintiff offered to prove he made his statement to the police officer within ten minutes after sustaining severe injuries from the collision. The offered statement was self-serving to the extent it claimed defendant struck plaintiff and was made in response to an inquiry. Plaintiff also offered to prove the police officer would testify plaintiff was in a dazed condition when he made the statement.

Reasonable minds may differ as to whether plaintiff met his burden in showing the statement was an excited utterance; therefore, no manifest abuse of the trial court's discretion has been demonstrated. In any event, the excluded evidence was merely repetitious of plaintiff's testimony at trial. Thus, no prejudice resulted to plaintiff by the trial court's ruling.

■ Plaintiff's second point alleges juror misconduct entitles him to a new trial. Plaintiff's attorney attached an affidavit to his motion for new trial in which he swore Jurors 2, 10, and 12 could testify Juror 3 was aware of and familiar with the intersection where the accident took place but remained silent when asked of this on voir dire. The affidavit also recited the three jurors would testify Juror 5 had visited the intersection after trial began and brought some of his impressions back to the jury room. After receiving plaintiff's affidavit, defendant promptly sent a letter to the trial court objecting to its admissibility.

■ The affidavit of the attorney as to statements made by jurors tending to impeach their verdict is inadmissible evidence of juror misconduct not only because it is hearsay but for the same reasons affidavits or testimony from the jurors themselves are inadmissible: a juror may not impeach the verdict with respect to conduct inside or outside the jury room, before or after the jury is discharged. *McDaniel v. Lovelace,* 439 S.W.2d 906, 909 (Mo.1969). See also *State ex rel. State Highway Commission v. Lack,* 643 S.W.2d 46, 50 (Mo.App. 1983); *Norwood v. Lazarus,* 634 S.W.2d 584, 589 (Mo.App.1982).

■ Plaintiff next claims defendant is not the real party in interest to maintain an action for damage done to the Jeep because defendant did not own the vehicle, his father did. Although defendant testified he paid his father for the damages done to the Jeep, equitably subrogating himself to father's claim, defendant did not allege or prove an assignment by father of his claim. Therefore, the legal right to the claim remained with father and he was the real party in interest to maintain an action for damages to the Jeep. See *State ex rel. Home Service Oil Co. v. Hess,* 485 S.W.2d 616, 618 (Mo.App. banc 1972).

The judgment for defendant on plaintiff's claim is affirmed; defendant's judgment on his counterclaim is reversed.

PUDLOWSKI, J., concurs in result in separate opinion.

SIMON, J., concurs in separate concurring opinion.

PUDLOWSKI, Judge, concurring in result.

I am constrained to concur in the result of Judge Crist's opinion. However, I ob-

ject to the indiscriminate application of Lord Mansfield's[1] rule to the particular fact situation of this case because as I view the alleged juror misconduct, it collides with and imperils the fair trial concept which is so deeply entrenched in the American system of jurisprudence. 32 A.L.R.3d 1356, 1365.

This rule has been severely criticized by Wigmore[2] and under the circumstances of this case the rule should not have been applicable. There was no hearing.[3] It would seem the better application of the rule would be that the trial court conduct a hearing to determine if any misconduct did occur.

The sound rationale for a hearing and the court's interrogation of the jurors is:

1. In the absence of any statute, of any legal or court rule, or if any declaration of public policy to the contrary, a court has the discretion, if not the inherent authority, to conduct such an interrogation because of its general supervisory powers, its control over the jurors, and its conduct of the trial.

2. Litigants are legally entitled to a fair trial before a jury sworn to consider only the evidence presented to it in court. It is the court, and the court alone, which is charged with the primary burden of assuring the litigants that their right to a fair trial is not an illusory legal concept but a legal reality.

3. The integrity and effectiveness of the jury system is at stake where there is juror misconduct. Consequently, the court should interrogate the jurors to determine whether such misconduct actually occurred, and, if so, whether the litigants were prejudiced thereby.

4. To the end that court interrogation of the offending jurors preserves and protects the fair trial concept and the integrity and effectiveness of the jury system, the ends of justice are served. A.L.R.3d Vol. 32, pp. 1366, 1367.

1. *Vaise v. Delaual,* 1 T.R. 11 (K.B.1785).

2. Wigmore on Evidence, Vol. VIII, Section 2346 et seq.

3. The trial judge had a serious coronary illness and the motion was never heard. After 90 days the motion was taken as denied.