**Kirby Dean HANSEN, Respondent,**

v.

**Scott A. JAMES, Appellant.**

**No. WD 45101.**

Missouri Court of Appeals,
Western District.

July 21, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied
Sept. 1, 1992.

Application for Transfer Sustained
Oct. 27, 1992.

Case Retransferred March 23, 1993.

Court of Appeals Opinion Readopted
March 26, 1993.

Joseph A. Sherman, Steven F. Coronado, Sherman, Taff & Bangert, P.C., Kansas City, for appellant.

Frank K. Nichols, Pope, Nichols & Hicks, St. Joseph, for respondent.

Before HANNA, P.J., and FENNER and ULRICH, JJ.

ULRICH, Judge.

Scott A. James appeals from the adverse judgment awarding Kirby Dean Hansen $240,000 for injuries Mr. Hansen received when he touched a downed 7,200 volt power line. Judgment followed jury verdict assessing Mr. Hansen's damage at $300,-000. The jury assessed eighty percent fault to Mr. James and twenty percent fault to Mr. Hansen. Mr. James argues on appeal that the trial court prejudicially erred when (I) it allowed Mr. Hansen to submit his case to the jury under the doc-

trine of res ipsa loquitur because, Mr. James contends, evidence failed to establish the second and third elements of the res ipsa loquitur doctrine; (II) the trial court submitted Instruction No. 7, which did not properly define the term "occurrence," thereby misdirecting, misleading, and confusing the jury; (III) the trial court allowed Mr. Hansen to amend his petition to allege general negligence; (IV) the trial court charged the jury with Instruction No. 7, which imposed upon Mr. James a greater standard of care than that required by law; and (V) the trial court refused to grant Mr. James' summary judgment and directed verdict motions because Mr. James' negligent acts were not the proximate cause of Mr. Hansen's injuries; and (VI) the trial court improperly admitted evidence of Mr. James' intoxication. Judgment is affirmed.

The evidence at trial established the following facts. On December 31, 1988, Mr. James attended a New Year's Eve party at a friend's home. While at the party, Mr. James consumed several alcoholic beverages. At approximately 1:00 a.m. on New Year's Day, Mr. James left the party and operated a motor vehicle accompanied by two passengers, James Spalding, the owner of the car, and Denelle Lusk. Approximately one mile from the party, Mr. James lost control of the vehicle, causing the automobile to leave the road, strike and damage a power pole, and proceed down an embankment. One of Mr. James' passengers was thrown from the vehicle. After Mr. James assisted his passengers to safety, he ran back to the party to summon help. Mr. James returned to the accident scene with individuals who assisted him. With the help of friends, Mr. James and his passengers were transported to the emergency room of a hospital located in Maryville, Missouri.

The damaged utility pole supported two electrical lines. One of the lines, a neutral line, was severed and lay on the ground. The second line, an uninsulated power line charged with 7,200 volts of electricity, supported the damaged utility pole and extended across the roadway. The second line was suspended at a height of six feet by the damaged pole and increased in height as it stretched to the next, undamaged utility pole.

Shortly after Mr. James' collision, Kirby Dean Hansen arrived at the New Year's Eve party with a friend, Denny Florea. At the party, Mr. Hansen and Mr. Florea learned of the accident and left the party to inspect the accident scene. Mr. Hansen and Mr. Florea initially drove past the scene without observing the wrecked automobile. However, Mr. Hansen and Mr. Florea ultimately found the accident scene. Mr. Florea testified at trial that the second time he and Mr. Hansen went by the accident scene he observed that "there was a pole knocked down and the lines were down." It was 2:00 a.m. when Mr. Hansen and Mr. Florea initially inspected the accident scene. After Mr. Hansen and Mr. Florea walked around the accident scene, they drove to the hospital in Maryville.

At the hospital, Mr. Hansen conversed with Mr. James and volunteered to return to the scene in order to transport the wrecked vehicle into town. Mr. Hansen and his father are in the business of towing automobiles. After leaving the hospital, Mr. Hansen telephoned his father at approximately 2:30 a.m. and requested that his father assist him in towing the vehicle. Mr. Hansen made arrangements to meet his father at their place of business in Hopkins, Missouri, several miles from the accident scene. When Mr. Hansen, his father, and Mr. Florea arrived at the accident scene, no one else was present. A few minutes later, Deputies Miller and Martin of the Nodaway County Sheriff's Department arrived.

When the deputies arrived at 3:00 a.m., Mr. Hansen, his father, and Mr. Florea were already preparing to tow the wrecked vehicle. The deputies noted the downed power lines and warned those present about them. After asking the deputies for permission to load the vehicle for towing, Mr. Hansen, with the assistance of his father and Mr. Florea, began and completed the loading process for towing the vehicle. Mr. Hansen's father then began to tow the wrecked automobile from the accident scene. At approximately 3:35 a.m., Depu-

ties Miller and Martin noticed that the downed power line wire was shaking and observed Mr. Hansen lying on the ground underneath the wire. The officers, Mr. Hansen's father, and Mr. Florea immediately aided Mr. Hansen. After freeing Mr. Hansen from the power line, an ambulance and the utility company were summoned. Deputy Martin testified about the conversation between himself and Mr. Hansen immediately after Mr. Hansen sustained his injuries. Deputy Martin recalled Mr. Hansen stating that "he had reached up to push the wire out of the way so the truck could pass under it."

As a result of electrical burns sustained by Mr. Hansen when he contacted the wire, Mr. Hansen's dominant right hand and a portion of his arm were amputated. Mr. Hansen also suffered severe burns to his back. Mr. Hansen's medical bills totalled $37,874.94.

The jury's unanimous decision assessed Mr. Hansen's damages at $300,000, and apportioned Mr. Hansen's fault at twenty percent and Mr. James' fault at eighty. Mr. James appeals from the judgment entered pursuant to the jury verdict.

I

■ Mr. James argues as his first point on appeal that insufficient evidence supports the submissibility of Mr. Hansen's case under the doctrine of res ipsa loquitur. The doctrine of res ipsa loquitur permits a jury to infer from circumstantial evidence that the defendant is negligent without requiring that the plaintiff prove defendant's specific negligence. *Trefney v. Nat'l Super Markets, Inc.*, 803 S.W.2d 119, 121 (Mo.App.1990); *see also Marshall Interiors v. Young Men's Christian Ass'n.*, 787 S.W.2d 329, 331 (Mo.App.1990). The plaintiff must prove the doctrine's three elements: "(1) the incident resulting in injury is of the kind which ordinarily does not occur without someone's negligence; (2) the incident is caused by an instrumentality under the control of the defendant; and (3) the defendant has superior knowledge about the cause of the incident." *Trefney*, 803 S.W.2d at 121. Mr. James contends

that Mr. Hansen failed to prove either the second and third elements of the res ipsa loquitur doctrine.

■ On appeal, the evidence presented at trial is not reweighed. *Strick v. Stutsman*, 633 S.W.2d 148, 152 (Mo.App.1982). The appellate court's duty, in res ipsa loquitur cases is "to determine whether certain circumstances warrant an inference where application of the doctrine is sought. Determination of the application of the doctrine is a matter of law left to the exclusive province of our courts and is not a matter left for determination by a jury as a factfinder." *Id.* Missouri courts have long recognized that "[n]o presumption of liability will be drawn from the fact of an accident and resulting injury. It is the character or nature of the accident, rather than the fact of the accident, which determines the application of the doctrine." *Id.*

■ Mr. James contends that the trial court's submission of the case under the doctrine of res ipsa loquitur was erroneous because he did not have control over the power line, the instrumentality which directly caused Mr. Hansen's injuries. In examining the "control" element of res ipsa loquitur, the Eastern District stated the following:

If the plaintiff shows the defendant was in exclusive control of the instrumentality which caused the accident, he has inferentially focused negligence upon defendant. If the plaintiff does not show the defendant's exclusive control of the instrumentality, he still may fix the defendant with responsibility for the negligence by showing the defendant had the right or power to control the instrumentality and the opportunity to exercise it.

*Mahan v. Missouri Pacific R. Co.*, 760 S.W.2d 510, 513 (Mo.App.1988). The record reveals that Mr. Hansen established that Mr. James exclusively controlled or had the right to control the instrumentality which caused the incident which produced Mr. Hansen's injuries.

The incident was caused by the vehicle driven by Mr. James not the downed power line as asserted by Mr. James. Although

the electrical circuit from the downed power line flowing through Mr. Hansen resulted in his injuries, the automobile driven by Mr. James created the situation that resulted in Mr. Hansen's injuries. The vehicle was the instrumentality that set in motion the series of events which eventually created the incident. Mr. James had exclusive control over the automobile. He operated the vehicle when it left the roadway and struck the utility pole, thereby creating the dangerous situation which ultimately resulted in the severe injuries suffered by Mr. Hansen. Thus, because Mr. James had exclusive control over the instrumentality which caused the incident, the second element of the doctrine of res ipsa loquitur was established.

■ Mr. James also contends that Mr. Hansen failed to prove that Mr. James had superior knowledge about the cause of the incident, the third element of res ipsa loquitur. *Id.* The doctrine of res ipsa loquitur is pleaded when the plaintiff does not know defendant's specific negligent act. Theoretically, when the first two elements of the doctrine exist, the defendant, better than the plaintiff, may know the exact negligent act. Mr. James exclusively controlled the automobile when it left the roadway and struck the utility pole, thereby causing the neutral line to break and the power line to descend to a dangerous height. Mr. James is the person who can, and did, present the facts detailing the cause of the incident. Therefore, Mr. Hansen sufficiently established the third element of res ipsa loquitur. Accordingly, the trial court properly allowed Mr. Hansen to submit his case utilizing the doctrine of res ipsa loquitur. Mr. James' first point is denied.

### II

■ Mr. James argues for his second point on appeal that the trial court prejudi-cially erred when it charged the jury with Instruction No. 7[1] and did not define the term "occurrence" in paragraph third of the instruction. Mr. James cites MAI 4.01 as support for his argument that when MAI 31.02 is used, which Instruction No. 7 is patterned after, the term "occurrence" must be modified by substituting some descriptive phrase which specifically describes the compensable event. Paragraph three of the Notes on Use for MAI 4.01 states that "[w]hen the evidence discloses a compensable event and a noncompensable event, both of which are claimed to have caused damage, the term 'occurrence' may need to be modified."

Mr. James' argument fails for several reasons. First, MAI 31.02's Notes on Use do not require the modification of the term "occurrence," as does MAI 4.01. Second, the evidence in the present case does not "disclose[ ] a compensable event and a noncompensable event...." The compensable event which was the proximate cause of Mr. Hansen's injuries was Mr. James' negligently driving the vehicle. No "noncompensable event" occurred relating to the accident. Finally, the term "occurrence" in paragraph third of Instruction No. 7 references the occurrence described in paragraph second of the instruction, that "the automobile [driven by Mr. James] left the highway and struck the power pole...." The term "occurrence" in paragraph third of the instruction was sufficiently described. Therefore, Mr. James' second argument is denied.

### III

■ Mr. James proposes for his third argument that the trial court abused its broad discretion in allowing Mr. Hansen to amend his pleadings to allege general negligence during the trial immediately before

---

1. Instruction No. 7 submitted the following:
   In your verdict you must assess a percentage of fault to Defendant James whether or not Plaintiff was partly at fault if you believe:
   First, Defendant was the driver of the car; and
   Second, the automobile left the highway and struck the power pole; and

   Third, from the facts in evidence and the reasonable inferences therefrom, you find such occurrence was the direct result of Defendant's negligence, and Fourth, as a direct result of such negligence Plaintiff sustained damage....

the close of plaintiff's case. Mr. James' contention that the trial court abused its discretion by allowing Mr. Hansen to amend his petition is premised principally on his previous argument that the doctrine of res ipsa loquitur was inappropriate in this case. Mr. James also contends that Mr. Hansen should not have been allowed to amend his petition because he had alleged and proved Mr. James' specific negligence of failure to warn.

Appellate courts recognize that "[a] trial court has broad discretion when determining whether to permit an amendment of the pleadings, and the court's decision will not be disturbed on appeal unless there is an obvious and palpable abuse of such discretion." *Mahan*, 760 S.W.2d at 514. (quotations omitted). The doctrine of res ipsa loquitur was applicable. Furthermore, Mr. Hansen pleaded but did not prove specific negligence. Amendment of Mr. Hansen's petition conformed his pleadings to the evidence presented at trial. Pleadings may be amended to conform to evidence presented at trial. *Buchanan v. Mitchell*, 785 S.W.2d 317, 319 (Mo.App.1990). Mr. James was not prejudiced. Therefore, the trial court did not abuse its discretion in allowing Mr. Hansen to amend his pleadings. Mr. James' third point is denied.

## IV

■ Mr. James' fourth point on appeal contends that Instruction No. 7 imposed upon him a greater standard of care than that required by law in that it defined his "negligence" as the failure to use the highest degree of care. This argument is without merit. Mr. James was operating the motor vehicle when it veered off the roadway and struck the utility pole. Pursuant to § 304.010.1, RSMo Supp.1991, Mr. James was required to operate the motor vehicle exercising "the highest degree of care." Instruction No. 7's definition of negligence, which utilizes MAI 11.01's definition of "highest degree of care," appropriately defines the degree of care Mr. James was mandated to exercise. Accordingly, Instruction No. 7 did not impose upon Mr. James a higher standard of care than the law required. Mr. James' Point IV is denied.

## V

■ Mr. James' next point on appeal challenges the trial court's denial of Mr. James' motions for summary judgment and directed verdict. Mr. James' dispositive motions are premised on the argument that the evidence established that his negligence was not the proximate cause of Mr. Hansen's injuries and that Mr. Hansen's own negligence was an efficient, intervening, and proximate cause of the injuries sustained.

The Missouri Supreme Court in *Krause v. U.S. Truck Co.*, 787 S.W.2d 708, 710 (Mo. banc 1990), defined "proximate cause" as follows:

The practical test of proximate cause is generally considered to be whether the negligence of the defendant is that cause or act of which the injury was the natural or probable consequence.... Thus, from the essential meaning of proximate cause arises the principle that in order for an act to constitute the proximate cause of an injury, *some* injury, if not the precise one in question, must have been reasonably foreseeable. The cases discussing proximate cause contain the exasperating caveat that in deciding questions of proximate cause and efficient, intervening cause, each case must be decided on its own facts, and it is seldom that one decision controls another.

(citations and quotations omitted). "Proximate cause, and hence, a causal connection, are present if the evidence shows the negligence to have been the efficient cause which set in motion the chain of circumstances leading up to the injury." *Sirna v. APC Building Corp.*, 730 S.W.2d 561, 564 (Mo.App.1987).

In the present appeal, Mr. James' negligent driving and the resulting collision into the utility pole presented the dangerous downed power line situation. Thus, the jury could find that Mr. James' negligent operation of the motor vehicle "set in motion the chain of circumstances leading up to the injury." *Id.* Furthermore, Mr. Hansen's injury, that is, his coming into contact with the uninsulated power line, could be regarded as a natural and probable consequence of Mr. James' negligence. Therefore, the jury could find that Mr. James'

negligence was the proximate cause of Mr. Hansen's injuries.

Mr. Hansen's act of touching the electrical line was not, as a matter of law, an intervening resulting cause. "An intervening resulting cause is a new and independent force which so interrupts the chain of events initiated by defendant's negligence as to become the responsible, direct, proximate cause of the injury." *Sirna*, 730 S.W.2d at 564. The jury could find that Mr. Hansen's act did not interrupt the chain of events produced by Mr. James' negligence and that Mr. James' actions were the proximate cause of the injuries. Additionally, the jury could find that Mr. Hansen's actions constituted comparative fault, for which he was assessed twenty percent liability by the jury. Sufficient evidence existed to submit these issues to the jury. Therefore, the trial court properly denied Mr. James' dispositive motions. Mr. James' fifth point is denied.

### VI

■ Mr. James' last point on appeal contends that the trial court improperly admitted evidence of his intoxication.[2] "Evidence of intoxication is relevant to the issue of negligence when presented in conjunction with evidence of erratic driving or other factors." *Stojkovic v. Weller*, 802 S.W.2d 152, 154 (Mo. banc 1991). The trial court had before it evidence that Mr. James' driving was erratic. Mr. James was proceeding down the roadway when his vehicle inexplicably left the road, struck a utility pole, and went down an embankment, throwing one of his passengers from the automobile. The trial court did not abuse its discretion in admitting evidence of Mr. James' intoxication. Therefore, Mr. James' last point is denied.

The judgment is affirmed.

All concur.

**2.** The trial court admitted *testimony regarding* both parties' consumption of alcoholic beverages before the accident and the record reflects

*that the parties' attorneys zealously advocated those facts to the jury.*