**James W. HALE, Respondent,**

v.

**AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Appellant.**

**No. WD 51320.**

Missouri Court of Appeals, Western District.

July 2, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 27, 1996.

Application to Transfer Denied Sept. 17, 1996.

Keith W. Ferguson, St. Joseph, for appellant.

R. Dan Boulware, St. Joseph, for respondent.

Before FENNER, C.J., P.J., and HANNA and LAURA DENVIR STITH, JJ.

FENNER, Chief Judge.

Appellant, American Family Mutual Insurance Company, appeals the judgment of the trial court, after trial by jury, in favor of respondent, James W. Hale. While driving home from work one day at approximately 2:10 p.m., James Hale was struck in the head by a rock that came through the windshield of his vehicle. Hale filed suit against American Family under the uninsured motorist provisions of his policies with American Family alleging that the accident was caused by an unknown vehicle as defined in his policies. Hale submitted his case under the doctrine of *res ipsa loquitur* and the jury returned a verdict in the amount of $500,000. The poli-

cy limits provided for total coverage of $100,-000, and the trial court reduced the judgment accordingly.

When injured, Hale was traveling in the right northbound lane of Highway 759 in St. Joseph, Missouri. At the location of the accident, Highway 759 is a four-lane highway with two lanes northbound and two lanes southbound. Hale testified that the rock in question came from the direction of the southbound (oncoming) lanes of Highway 759. The record reflects that the rock came at a low trajectory at a level just over the hood of Hale's vehicle. The rock measured 6 inches by 7 inches across and it was 2.5 to 3 inches thick. The rock weighed over 6 pounds and it had a foreign, black substance on each of its two opposite flat sides.

## I.

In its first point on appeal, American Family argues that the trial court erred by not directing a verdict in its favor at the close of all the evidence and for judgment notwithstanding the verdict because Hale failed to establish the elements necessary for recovery under the doctrine of *res ipsa loquitur*.

■ *Res ipsa loquitur* permits the fact finder to infer negligence without proof of specific negligent conduct on the part of the defendant where: "(1) The incident resulted in an injury of the kind which ordinarily does not occur without someone's negligence; (2) the incident is caused by an instrumentality under the control of the defendant; and (3) the defendant has superior knowledge or means of information as to the cause of the incident." *Christie v. Ruffin,* 824 S.W.2d 534, 536 (Mo.App.1992). The event must be an unusual occurrence which ordinarily results from negligence and which, thereof, negligence is a reasonable inference. *Id.*

■ A party seeking the application and benefit of the doctrine of *res ipsa loquitur* need not submit facts surrounding the occurrence that exclude all reasonable hypotheses except defendant's negligence. *Strick v. Stutsman,* 633 S.W.2d 148, 151 (Mo.App. 1982). The application of the doctrine simply requires that there be facts and circumstances from which one can conclude that,

more often than not, an occurrence or accident of the type involved results from a failure to exercise reasonable care by the party in charge of the instrumentality. *Id. Res ipsa loquitur* is incompatible with proof of specific negligence. *Bonnot v. City of Jefferson City,* 791 S.W.2d 766, 769 (Mo.App. 1990). "If the plaintiff proves the cause of the casualty, it is no longer possible to rely on a presumption of the defendant's negligence attributable to other unspecified acts or omissions. The *res ipsa loquitur* rule aids the injured party who does not know and therefore cannot plead or adduce proof showing the specific cause of or how the event which resulted in his injury occurred, but if he knows how it came to happen, and just what caused it, and either specifically pleads or proves the cause, there is neither room nor necessity for the presumption or inference which the rule affords." *Id.* However, "if the plaintiff's evidence tends to show the cause of the occurrence but if that evidence also leaves the cause in doubt or not clearly shown, plaintiff will not be deprived of the benefit of the *res ipsa loquitur* doctrine." *Id.*

■ In reviewing whether the trial court erred in submitting the plaintiff's claim to the jury, the Court of Appeals must determine whether plaintiff presented substantial evidence at trial to support a theory of recovery and must view all evidence presented at trial in the light most favorable to the plaintiff, giving plaintiff the benefit of all reasonable inferences and disregarding all unfavorable evidence. *Elsberry v. Boulevard Motors, Inc.,* 886 S.W.2d 732, 745 (Mo.App. 1994).

### Accident Would Not Ordinarily Have Occurred Without Someone's Negligence

■ The first element for submission under *res ipsa loquitur* is that the accident would not ordinarily occur without someone's negligence. Appellant argues that the rock could have intentionally been thrown by someone or, if propelled from the tires of another vehicle, that the unknown driver might have been forced to hit the rock to avoid colliding with another vehicle.

We examine the evidence to determine if the facts and circumstances here establish that an accident of this type, more often than not, is of the type that results from a failure to exercise the requisite care required. In this regard, if the evidence reflects that the driver of an automobile was involved, that driver is required to exercise the highest degree of care, which is that degree of care that a very careful and prudent person would use under the same or similar circumstances. § 304.010.1, RSMo.1994; *Buck v. Union Elec. Co.*, 887 S.W.2d 430, 435 (Mo.App.1994).

Considered in the light most favorable to the plaintiff, the evidence reflects that the location of the accident was an area with industrial as opposed to residential traffic. It was an area of open and generally unobscured visibility within the distance that the rock in question could have been thrown by an individual. There were no overhead structures and no pedestrian walkways in the area. There was no industrial or construction equipment operating in the area. There were no pedestrians in the area and there were trucks in the southbound (oncoming) lanes of traffic. The rock was propelled from the oncoming lanes of traffic, which consisted mostly of truck traffic. The rock evidenced a foreign, black substance on both flat sides in the location where there would be rubber from friction if the rock were caught between the dual tires of a vehicle and propelled into traffic. The physical damage to Hale's vehicle indicated that the rock was propelled from having been lodged in the tires of a dual-wheeled vehicle. The rock was explained to have entered Hale's vehicle "like an artillery shell."

At the location of the accident, the lanes of traffic were each 12 feet wide. The maximum tractor-trailer is 8.5 feet wide which would allow a driver to avoid striking a rock of the size in question. The size of the rock was shown to be of the size used in design of highways for stopping sight distance. Dual-wheeled trucks present a known danger of propelling rocks into traffic. Furthermore, there was testimony presented that a careful and prudent driver would check the tires of a dual-wheeled vehicle for rocks lodged in the wheels before driving the vehicle and would further avoid striking a rock in the roadway of the size of the one that stuck Hale.

The record here reflects that there was sufficient evidence to show that more likely than not this accident would not have occurred without someone's negligence. It would not be reasonable to believe that the rock was thrown by an individual given its size, lack of overhead structures, visibility in the area and lack of individuals observed at the scene. Furthermore, the evidence of the black substance on the rock, the trajectory of the rock, the direction from which the rock was propelled, the size of the rock, the damage to Hale's vehicle, and the nature of the oncoming traffic all support plaintiff's theory that the rock was generated by southbound traffic by being propelled from the wheels of a dual-wheeled vehicle as a result of some unknown act of negligence of another driver. The specific act of negligence of the unknown driver could have been failing to keep a careful lookout, following another vehicle too closely, speeding, failing to check the tires of vehicle for foreign objects, or some other specific act which was the cause of the rock being propelled into plaintiff's vehicle.

We believe that plaintiff established that the accident was of the type that ordinarily would not have occurred absent someone's negligence.

### Incident Caused by an Instrumentality under the Control of the Defendant

■ In regard to the "control" element of *res ipsa loquitur*, the plaintiff must show that the defendant was in exclusive control of the instrumentality which caused the accident or that the defendant had the right or power to control the instrumentality and the opportunity to exercise it. *Hansen v. James*, 847 S.W.2d 476, 479 (Mo.App.1992).

In *Hansen*, the plaintiff was injured when he came into contact with a downed power line. The pole supporting the power line had been struck by the defendant's car and defendant argued that the instrumentality that caused plaintiff's injuries was the power line, not his car. This court rejected that argument finding that the defendant's vehicle was the instrumentality that set in motion the

series of events that eventually created the incident. *Id.* at 480. In *Hansen,* this court reasoned that since the defendant operated the vehicle when it struck the utility pole creating the dangerous situation, he had exclusive control over the instrumentality that created the incident. *Id.*

■ Like *Hansen,* in the case at bar the unknown motorist's vehicle is the instrumentality that set in motion the series of events that created this incident with the rock breaking through Hale's vehicle striking him in the head. The driver of the unknown vehicle had exclusive control over the vehicle which was the instrumentality that created the incident. Under the terms of its policies, American Family stood in the place of the unknown motorist.

American Family's argument that the element of control was not established for submission under *res ipsa loquitur* is denied.

### Defendant Had Superior Knowledge or Means of Information

In *Hansen,* the appellant also challenged the "knowledge" element for submission under *res ipsa loquitur.* In *Hansen,* this court stated:

> The doctrine of *res ipsa loquitur* is pleaded when the plaintiff does not know the defendant's specific negligent act. Theoretically, when the first two elements of the doctrine exist, the defendant, better than the plaintiff, may know the exact negligent act. [The defendant] exclusively controlled the automobile when it left the roadway and struck the utility pole, thereby causing the neutral line to break and the power line to descend to a dangerous height. [The defendant] is the person who can, and did, present the facts detailing the cause of the accident. Therefore, [the plaintiff] sufficiently established the third element of *res ipsa loquitur.*

*Id.* at 480.

■ Once again, American Family takes the place of the unknown motorist under the terms of its policies with Hale and as in *Hansen,* the driver of the vehicle in question is who had the ability to present facts detailing the cause of the incident.

American Family's argument that the element of "knowledge" was not established for submission of *res ipsa loquitur* is denied.

### Impermissible Stacking of Inferences

American Family argues further under its first point that Hale was allowed to impermissibly stack inferences by stacking the inference that the rock in question was propelled by a motor vehicle onto the inference that the driver must have seen the rock onto the inference that the driver was negligent in failing to avoid the rock.

■ "A party may draw a number of inferences so long as each has a factual foundation. However, an ultimate inference arrived at solely by basing an inference on an inference which is unsupported by the facts is not allowed." *Rob–Lee Corp. V. Cushman,* 727 S.W.2d 455, 459 (Mo.App.1987). Nonetheless, "[t]his rule against stacking or pyramiding inferences is not a general rule applicable to all situations but a rule of reason applied in the trial court's discretion to guard against attenuated reasoning, as where an initial inference is drawn from a fact, and other inferences are built solely and cumulatively upon the first, so that *the conclusion reached is too remote and has no sound logical foundation in fact.*" *Mediq PRN Life Support Servs., Inc. v. Abrams,* 899 S.W.2d 101, 108 (Mo.App.1994), *quoting Wills v. Berberich's Delivery Co.,* 345 Mo. 616, 134 S.W.2d 125, 129 (1939).

■ Under the doctrine of *res ipsa loquitur,* negligence is a reasonable inference given the unusual nature of the occurrence. *Christie,* 824 S.W.2d at 536. The doctrine aids the injured plaintiff who does not know and, therefore, cannot plead or adduce proof showing the specific cause of his injury. *Bonnot,* 791 S.W.2d at 768–69. An initial inference of negligence is inherent in a *res ipsa loquitur* case.

As stated previously herein, a party seeking the application and benefit of the doctrine of *res ipsa loquitur* need not submit facts surrounding the occurrence that exclude every reasonable hypothesis except defendant's negligence. *Strick,* 633 S.W.2d at 151. The

application of the doctrine simply requires that there be facts and circumstances from which one can conclude that, more often than not, an occurrence or accident of the type involved results from a failure to exercise reasonable care by the party in charge of the instrumentality. *Id.*

 In the case at bar, the inference that an oncoming vehicle propelled the rock is supported under the facts as reviewed herein under American Family's argument that Hale failed to establish that this was an incident that does not ordinarily occur without someone's negligence. The rock came from the direction of the oncoming lanes of traffic where the evidence established that the only known source of propulsion was the presence of oncoming vehicles. The inference that an incident of this type does not ordinarily occur without someone's negligence was supported by the physical characteristics of the rock including size, shape, weight and markings. There was no abuse of discretion by the trial court failing to find an impermissible stacking of inferences.

American Family's first point is denied.

## II.

In its second point, American Family argues that the trial court erred by denying its motion for mistrial and ordering a new trial because certain exhibits that were not to have been passed to the jury were sent to the jury during deliberation.

During the jury's deliberations, a settlement demand letter from plaintiff's counsel to defendant's counsel was inadvertently sent to the jury. The letter had been received for the limited purpose of considering prejudgment interest in the event of a favorable verdict. In addition to the settlement demand letter, the plaintiff's four policies of insurance with American Family were re-

ceived in evidence. However, the policy declaration sheets, which showed the extent of insurance coverage in the total amount of $100,000, were to be removed from the policies. The declarations sheets and the settlement demand letter were marked by plaintiff's counsel with post-it notes which stated "Don't send to jury." Nonetheless, the court inadvertently sent these documents to the jury upon the jury's request to view the trial exhibits.

 As a general rule, offers of compromise or settlement are to be excluded at trial. *Holtmeier v. Dayani,* 862 S.W.2d 391, 403 (Mo.App.1993). Nonetheless, mistrials are a drastic remedy and an appellate court will reverse the determination of the trial court as to whether to grant a mistrial only where there has been a manifest abuse of discretion, which requires grievous error where prejudice cannot otherwise be removed. *Blake v. Irwin,* 913 S.W.2d 923, 933 (Mo.App.1996).

 In the case at bar, when the exhibits were delivered to the jury, within two or three minutes the bailiff returned the improper exhibits to the court advising that the foreperson told him that the jury observed the post-it notes on the exhibits and returned them to the bailiff. At this point, the trial court advised counsel that it would allow the jury to continue to deliberate and voir dire the jury in regard to the improper exhibits after a verdict was reached. American Family requested a mistrial which request was denied.

 Upon return of the jury's verdict, the court, as well as counsel for the parties, inquired of the jury as to the documents improperly passed to them. There was no objection by either of the parties to the voir dire of the jury.[1]

---

1. Affidavits and testimony of jurors are generally inadmissible to impeach a verdict. *Jones v. Wahlic,* 667 S.W.2d 729, 731 (Mo.App.1984). The inadmissibility of such evidence may, however, be waived by its receipt without objection. *Shearin v. Fletcher/Mayo/Assoc.,* 687 S.W.2d 198, 203 (Mo.App.1984). In the case at bar, there was no objection to the court receiving testimony from the jurors. American Family did request a

mistrial, but there was no objection to the voir dire process.

Furthermore, in the case at bar, the court had not yet discharged the jury at the time that inquiry in regard to the improper exhibits was made. American Family does not complain on appeal that an effort was made to improperly impeach the jury's verdict. It would appear that it was within the discretion of the trial court, under the circumstances of the case at bar, to

During that voir dire process, most of the jurors testified that they never saw, read or heard any discussion regarding any of the exhibits. Only one juror read any part of the settlement demand letter and only two jurors read only the first page of one of the declaration sheets. Each of these three jurors specifically testified that the exhibits had absolutely no bearing on the verdict.

All of the jurors agreed that prior to the time that any exhibits entered the jury room, the jurors had unanimously agreed on liability in favor of the plaintiff. All of the jurors likewise agreed that it was unanimous before any exhibits entered the jury room that the plaintiff's damages would be assessed at least at $300,000. The decision that the damages for the plaintiff would be at least $300,000 was reached as a group through deliberations prior to the time any exhibits came into the jury room. All of the jury members agreed that they did not know what the policy limits of the case were. All of the jurors agreed that no number was ever mentioned in the jury room as possibly being the policy limits.

While no one disputes that the documents in question should not have been provided to the jury, we do not believe that the trial court abused its discretion by denying American Family's request for a mistrial. Most of the jurors were unaware of any of the contents of the documents. The jury was not aware of and did not discuss the policy limits. Liability in excess of the policy limits was decided by the jury prior to the documents entering the jury room and the three jurors who read any portion of the documents testified that the documents had no bearing on their decision. The trial judge was in the best position to determine the prejudice, if any, by these documents being sent to the jury and we do not believe that he abused his discretion by finding a lack of prejudice under the circumstances present here.

American Family's second point is denied.

### III.

█ In its final point, American Family argues that the trial court erred by submitting plaintiff's verdict director which stated as follows:

Your verdict must be for plaintiff if you believe:

First, the operator of an uninsured motor vehicle propelled the rock in evidence towards plaintiff's vehicle, striking plaintiff, and;

Second, from the facts in evidence and the reasonable inferences therefrom, you find such occurrence was the direct result of the negligence of the operator of the uninsured motor vehicle, and;

Third, as a direct result of such negligence, plaintiff sustained damage.

American Family reiterates the arguments it made at the time of the submission of this instruction and argues that plaintiff's verdict director (1) failed to identify how American Family or the uninsured motor vehicle driver had any control, right of control, or management of any instrumentality; (2) that the verdict director failed to describe any occurrence, event or incident which is the type that does not ordinarily happen when those in charge use due care; and (3) that the verdict director improperly submitted *res ipsa loquitur* because the plaintiff had introduced evidence which sought to establish the precise and specific negligence of the uninsured motor vehicle.

Plaintiff's verdict director was patterned after MAI 31.02(3), the verdict director for a general *res ipsa loquitur* submission modified by MAI 31.11, which is the verdict director for submission against an uninsured motorist. We believe that the verdict director was proper under the evidence of this case.

In *Housing Auth. of the City of Rolla v. Kimmel*, 771 S.W.2d 932, 939 (Mo.App.1989), the defendant argued that MAI 31.02(1), the *res ipsa loquitur* verdict director for vehicles striking a pedestrian, failed to submit the defendant's control or right to control the vehicle. The Southern District of this court held that such matters could be reasonably

voir dire the jury before discharge, but we need not address that question because it is not in issue.

inferred from the facts hypothesized in the instruction and that the defendant's argument was without merit. *Id.*

It was not necessary for plaintiff to have submitted that American Family or the uninsured driver had control or the right to control the uninsured vehicle. Control could be reasonably inferred from the facts hypothesized in plaintiff's verdict director.

Furthermore, the plaintiff's verdict director properly hypothesized that an operator of an uninsured motor vehicle propelled the rock in question toward plaintiff's vehicle, striking plaintiff. Such a required finding constitutes an event that does not ordinarily happen absent negligence under the evidence herein as established and more fully discussed under American Family's first point in this appeal.

Finally, once again as discussed under American Family's first point, the evidence in this case indicated that the rock was most likely propelled by the dualwheels of an oncoming vehicle, but the specific act of negligence of that driver was not demonstrated. The plaintiff was not able to establish whether the uninsured motorist may have failed to keep a careful lookout, been following another vehicle too closely, been driving at an excessive speed or failed to check his or her dual-wheels before beginning a trip. It was not error for the trial court to submit plaintiff's claim under *res ipsa loquitur.*

The judgment of the trial court is affirmed.

LAURA DENVIR STITH, J., concurs.

HANNA, J., dissents in separate dissenting opinion.

HANNA, Judge, dissenting.

I respectfully dissent because I do not believe that the plaintiff stated a cause of action under a *res ipsa loquitur* theory. Specifically, I do not agree that the plaintiff established that the accident was of the type that ordinarily would not have occurred absent someone's negligence. *Christie v. Ruffin,* 824 S.W.2d 534, 536 (Mo.App.1992).

The plaintiff was travelling in the far right northbound lane at a speed of approximately 45 to 50 miles per hour, when a 6 pound rock was projected from the direction of the oncoming traffic lane through the windshield of plaintiff's vehicle. There is no direct evidence that the rock came from another vehicle.

The plaintiff's expert testified that the rock came from an unidentified motor vehicle travelling in the opposite direction. The expert testified that the most probable source of propulsion was from the dual wheels of an oncoming vehicle. He explained that a rock of this size and shape could be captured between the dual tires of a tractor/trailer unit and, due to centrifugal force, released at various points and propelled forward. There was, however, no testimony that a tractor/trailer unit was in the vicinity at the time of the accident.[1]

Much of the evidence that "[t]he rock was propelled from the oncoming lanes of traffic" by a truck after the rock became "lodged in the tires of a dual-wheeled vehicle," as the majority states, stretches the limits of legal relevance. Nevertheless, accepting this postulate for the purposes of argument, the evidence falls short of establishing that this accident would not have happened except for the negligence of some unidentified driver. The majority assumes that the driver saw, or should have seen, the rock in the roadway, had time to avoid it, but negligently failed to avoid the rock, causing the rock to become wedged between the dual wheels of his vehicle.

A rock laying in the roadway that is run over by a vehicle does not necessarily amount to negligence on the driver's part. To reach this conclusion, we must assume that the driver had sufficient time to see and avoid the rock, whether it was laying in the roadway or dropped from a vehicle immediately preceding it. The majority assumes negligence when it is just as likely that the rock was not seen in time to avoid it. There is no evidence as to how the rock may have become wedged between the duals, and to suggest that it got there through the driver's

---

1. The plaintiff did not identify any specific or type of vehicle on the road except a station wagon 100 to 150 feet ahead of him, which he eliminated as the offending vehicle.

negligence is sheer speculation. Actually, it is more reasonable to expect that a driver would avoid an object in the roadway in order to keep from damaging the tires.

Further, there is no basis to assume that the truck picked up the rock on the roadway. The driver could just as easily have driven over the rock at a location other than the road, such as a rest stop, filling station, or at a place while loading or unloading the vehicle. Negligence cannot be assumed because of any of these activities. We cannot reasonably draw the conclusion, as the majority holds, that the rock wedged between the uninsured motorist's dual wheels or remained there because of the driver's negligence. Therefore, I would reverse the judgment.