Howard W. **ELSBERRY** and Anne W. Elsberry, Respondents,

v.

**BOULEVARD MOTORS, INC.**, Appellant.

No. 64975.

Missouri Court of Appeals, Eastern District, Division Three.

Nov. 15, 1994.

Alan C. Kohn, Susan E. Bindler, St. Louis, for appellant.

Douglas R. Dalgleish, Thomas S. Stewart, Kansas City, for respondents.

DOWD, Judge.

Howard W. Elsberry [1] brought suit against Boulevard Motors, Inc. (Boulevard) for breach of contract and fraud. The jury found in favor of Elsberry and awarded him

---

1. Although suit was brought by both Howard and Anne Elsberry, our opinion refers solely to Howard Elsberry as he was the one who negotiated the contract with Boulevard.

$50,000. Boulevard now appeals alleging: (1) Elsberry failed to make a submissible case for either breach of contract or fraud, and (2) the trial court erred by not remitting the jury's verdict to $26,410. We affirm.

Viewed in the light most favorable to the verdict, the following evidence was adduced at trial: In the fall of 1988, Elsberry, a life-long car lover from Moberly, Missouri, went to Boulevard to discuss the possibility of purchasing a new Mercedes 500SL, a car which was not even on the market yet. Michael Maurutto, the president of Boulevard, talked Elsberry into trading in his 1986 Mercedes for a 1988 Mercedes 560SL while he waited for the new 500SL to come on the market. Elsberry originally purchased a black demonstrator 560SL for $15,000, the difference between its full-sticker price and the full-sticker price of the 1986 Mercedes he was trading in, also known as a "sticker-to-sticker" deal. However, a few weeks later, Elsberry asked Boulevard to locate a different 560SL because he was unhappy with the color of the demonstrator. Boulevard located a white 560SL for Elsberry and he paid Boulevard an additional $6,272. At this time, Boulevard also agreed to sell Elsberry the first white Mercedes 500SL to arrive for the difference between its sticker price and the sticker price of the white 560SL.

On February 3, 1989, Bob O'Brien, Boulevard's sales manager, sent in a "Production Reservation Request" for Elsberry's 500SL. In August of 1990, O'Brien telephoned Elsberry and said his Mercedes 500SL was being manufactured in Germany and would be arriving soon.

On October 4, 1990, Elsberry had his 1988 Mercedes 560SL professionally cleaned and drove it to Boulevard so it would be available to Boulevard for resale before it reached 30,000 miles. Elsberry gave the keys and the title to the car to O'Brien and told him he was free to sell it. However, O'Brien told Elsberry not to sign the title yet because "you never know what will happen." During their October 4 meeting, Elsberry and O'Brien also completed a Retail Buyers Order. On the order, O'Brien listed the full-sticker price of the 500SL as $90,700. He then listed the "trade-in allowance" for the

Elsberry's 560SL as $63,410 and calculated the "net trade difference" as $27,290. O'Brien wrote this balance in three separate places on the Retail Buyers Order. Both Elsberry and O'Brien signed the agreement. O'Brien talked about what a good deal Elsberry had made and never indicated Boulevard might "reappraise" his trade-in at a later date even though he was leaving it at Boulevard that day.

On November 24, 1990, Boulevard received the Mercedes 500SL Elsberry had contracted to buy. O'Brien called Elsberry and told him the new 500SL had arrived, and on November 29, 1990, Elsberry came to St. Louis to pick up his new car.

O'Brien pointed out faults with the new 500SL while Elsberry was test driving it. Elsberry also admitted he "wasn't completely thrilled" because the car was not performing as it should, but he stated he wanted to go ahead with the deal anyway. O'Brien then stated he could not do the deal as agreed. After O'Brien refused to explain why, Elsberry asked to speak with Maurutto and was told he was not there. Because Elsberry's ride had already left, he got in the 1988 Mercedes 560SL and drove away. After driving a few blocks, he returned to the dealership and found Maurutto, who also refused to sell the car to Elsberry on a sticker-to-sticker basis. Both Maurutto and O'Brien insisted they could not find the written contract Elsberry and O'Brien signed on October 4, 1990. Elsberry returned to Moberly in the 560SL and found his copy of the contract. However, Boulevard still refused to go through with the deal without stating why. Later Elsberry learned Boulevard had reappraised his trade-in and valued it at only $37,000.

On December 6, 1990, Elsberry filed suit against Boulevard, seeking specific performance of the October 4 contract. During pre-trial discovery, he learned Boulevard had sold the 500SL to an exotic car dealer. In fact, the car dealer had contracted to buy the car for full-sticker price without a trade-in on November 28, 1990, the day before Elsberry was to pick it up. After learning the car was no longer available, Elsberry amended his petition to seek damages for fraud and

breach of contract. After trial, the jury returned a general verdict in favor of Elsberry and awarded him $50,000 in damages. The trial court denied Boulevard's motions for a judgment notwithstanding the verdict and for a remittitur of the verdict, and Boulevard now appeals.

In Point I, Boulevard first alleges the trial court erred in denying its motion for a directed verdict and submitting Elsberry's breach of contract claim to the jury because the printing on the back of the parties' written contract gave Boulevard the right to reappraise Elsberry's trade-in.

■ In reviewing whether the trial court erred in submitting Elsberry's breach of contract claim to the jury, we must determine whether or not he presented substantial evidence at trial to support his theory of recovery. *Massey–Ferguson Credit Corp. v. Black*, 764 S.W.2d 137, 145[6] (Mo.App.1989). Further, we must view all evidence presented at trial in the light most favorable to Elsberry, giving him the benefit of all reasonable inferences, and disregarding all evidence unfavorable to him. *Id.*

■ Boulevard argues the following language printed on the back of the parties' contract negates Elsberry's breach of contract claim as a matter of law:

9. REAPPRAISAL OF THE TRADED–IN VEHICLE: If a vehicle has been traded in as a part of the consideration for the vehicle ordered by Purchaser hereunder *and such vehicle is not delivered to Dealer until delivery to Purchaser of the vehicle purchased by Purchaser*, such traded-in vehicle shall be reappraised at that time and such reappraisal value shall determine the allowance made for such vehicle. If such reappraised value is lower than the original allowance therefor shown on the face of the Purchase Order, Purchaser may, if dissatisfied therewith, cancel this Purchase Order, provided, however, that such right to cancel is exercised prior to delivery of the vehicle ordered hereunder to the Purchaser and surrender of the traded-in vehicle to Dealer. (Emphasis added.)

■ We disagree. In order for this language to negate Elsberry's claim as a matter of law, this court must find, viewing the evidence and all reasonable inferences in Elsberry's favor, he failed to present substantial evidence to show he delivered his trade-in to Boulevard before the new 500SL was delivered to the dealer. No definition of "delivery" is contained in the contract; therefore, this term should be interpreted in accordance with its plain meaning. *Jim Carlson Const., Inc. v. Bailey*, 769 S.W.2d 480, 482 (Mo.App. 1989). *Webster's Third New International Dictionary* defines "deliver" as "to give, transfer, or yield possession or control."

■ Elsberry testified he delivered his car to Boulevard on October 4, 1990, by leaving the car, keys, and certificate of title with O'Brien. However, Boulevard argues there was no delivery as a matter of law because the title to the 560SL was not signed over to Boulevard. In so arguing, Boulevard relies on paragraph 10 of the contract and § 400.2–503(5), RSMo 1986. Paragraph 10 states:

PURCHASER'S WARRANTY OF TITLE AND PROMPT DELIVERY OF TITLE: Purchaser warrants that the traded-in vehicle is his property free and clear of all liens and encumbrances except as otherwise noted on the title. Purchaser understands that *the delivery and assignment of the certificate of title* to any traded-in vehicle is an integral part of the entire sale transaction expressed in this retail buyer's order. If purchaser does not simultaneously assign and deliver the certificate of title at the time of trade-in, or fails to do so within fifteen days of the trade-in, seller may: (1) cancel the sale/purchase order and exercise any and all remedies under the law including repossession, (2) treat the sale in every respect as if no trade-in took place and revise the purchase price for the ordered vehicle accordingly. In such cases, purchaser's trade-in will be returned upon payment of a reasonable charge for storage and repairs, if any.

However, paragraph 10 does not bar Elsberry's breach of contract claim as a matter of law. First, it deals with delivery for resale purposes, not for the purpose of reappraisal rights. Also, paragraph 10 specifical-

ly requires *delivery and assignment of title*, while paragraph 9 only requires the trade-in be *delivered* to Boulevard before the new car is delivered. Further, § 400.2–503(5) only applies in cases where delivery of both goods and documents is required by the terms of the contract. Paragraph 9 does not contain any such requirement. In any event, Boulevard waived any defects in Elsberry's delivery by accepting the 560SL and its title but instructing Elsberry not to sign the title at that time.

▇▇▇ Boulevard also alleges the trial court erred in submitting Elsberry's fraud claim to the jury because he failed to present substantial evidence to support every element of fraud.

First, this argument is procedurally irrelevant, as the jury returned a general verdict in Elsberry's favor under both the breach of contract and fraud claims and assessed total damages at $50,000. A claim for both breach of contract and fraud may arise from the same transaction. *See, Kincaid Enterprises, Inc. v. Porter*, 812 S.W.2d 892, 900[12] (Mo. App.1991). However, the damages for both causes of action are the same—the "benefit of the bargain." *Id.* at 900[15, 16]. Since the jury could have awarded Elsberry $50,000 in damages based on the breach of contract claim alone, it is irrelevant whether he presented substantial evidence to support his fraud claim. When a verdict is returned under alternative theories, it is proper if either theory is supported by the evidence. *See, Estate of Buchanan*, 840 S.W.2d 888, 889[5] (Mo.App.1992).

▇▇▇ In any event, sufficient evidence was presented to establish the requisite elements of fraud. The elements of fraud are: a representation, its falsity, its materiality, the speaker's knowledge of its falsity or ignorance of its truth, the speaker's intent that the statement be acted upon by the hearer in the manner contemplated, the hearer's ignorance of its falsity, his reliance on its truth, his right to rely thereon, and his consequent and proximate injury. *Carpenter v. Chrysler Corp.*, 853 S.W.2d 346, 355[5] (Mo.App.1993). Specifically, Boulevard alleges Elsberry failed to present sufficient evidence to show: (1) there was a misrepresentation, (2) Elsber-

ry had a right to rely on the representations made by O'Brien, and (3) Elsberry was damaged as a result. However, O'Brien did misrepresent, both orally and in the parties' written contract, that Boulevard would sell Elsberry a new Mercedes 500SL and take his 1988 Mercedes 560SL as a trade-in on a sticker-to-sticker basis. Elsberry's reliance on this representation was reasonable, as he previously purchased the 1988 Mercedes 560SL demonstrator from Boulevard on a sticker-to-sticker basis. Further, Elsberry was damaged because he was not able to purchase the Mercedes 500SL on a sticker-to-sticker basis, and because he passed up any chance of negotiating a deal with another dealership in reliance on O'Brien's misrepresentations. *See, McCall v. Jim Lynch Cadillac, Inc.*, 791 S.W.2d 456, 458–59[7] (Mo. App.1990). Point denied.

In Point II, Boulevard argues the trial court erred in not remitting the jury's $50,000 award to $26,410. In his petition, Elsberry requested $51,400 in damages. He based this figure on the difference between the contract trade-in price and the trade-in price Boulevard offered after the reappraisal ($26,410), and the premium for which the new Mercedes 500SL was selling in the marketplace ($25,000). Boulevard made a motion requesting the court to remit the jury's award to $26,410, because Elsberry should only be allowed to recover the difference in trade-in prices. The trial court denied this motion.

▇▇▇ The trial court's decision not to grant a remittitur is afforded broad discretion on appeal, as the trial court is in the best position to weigh the evidence. *Magnuson by Mabe v. Kelsey–Hayes Co.*, 844 S.W.2d 448, 457[15] (Mo.App.1992). We will not disturb the trial court's ruling on appeal absent a showing of abuse of discretion. *Id.* Further, a jury's award of damages is excessive only if it exceeds the amount requested in the party's petition and the amount supported by the evidence. *Larabee v. City of Kansas City*, 697 S.W.2d 177, 181[12] (Mo. App.1985). This is not the case here. In a breach of contract case, the nonbreaching party is entitled to the value of performance

of the contract. *See, Kincaid Enterprises,* 812 S.W.2d at 900[15]. Boulevard does not dispute that the 1991 Mercedes 500SL was selling for a premium in the marketplace. Therefore, had Boulevard performed under the terms of the written contract, not only would Elsberry have received $63,410 for his trade-in rather than $37,000, he would have owned a new Mercedes 500SL and could have sold it for a premium in the marketplace if he chose to do so. Point denied.

Judgment affirmed.

CRANE, P.J., and CRANDALL, J., concur.