Beverly EDWARDS and Bob Edwards, Plaintiffs–Appellants,

v.

SHELTER MUTUAL INSURANCE COMPANY, Defendant–Respondent.

No. SD 28802.

Missouri Court of Appeals, Southern District, Division One.

March 30, 2009.

David T. Tunnell, Springfield, MO, for Appellant.

Joseph P. Winget, Springfield, MO, for Respondent.

JEFFREY W. BATES, Judge.

Beverly and Bob Edwards (referred to individually by their given names and collectively as the Edwards) appeal from a summary judgment granted in favor of Shelter Mutual Insurance Company (Shelter) on the Edwards' claim for uninsured

motorist (UM) benefits. The Edwards contend there are genuine issues of material fact that must be resolved by a trial. A careful review of the record, however, demonstrates that it contains insufficient evidence from which a juror could reasonably infer that the Edwards are legally entitled to recover from the owner or operator of a hit-and-run motor vehicle. Accordingly, the summary judgment in favor of Shelter is affirmed.

## I. Standard of Review

 A summary judgment must be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Rule 74.04(c)(6).[1] Appellate review is *de novo. Wilson v. Rhodes,* 258 S.W.3d 873, 875 (Mo.App.2008). This Court uses the same criteria the trial court should have used in initially deciding whether to grant Shelter's motion. *Harris v. Smith,* 250 S.W.3d 804, 806 (Mo.App.2008). Appellate review is based upon the record submitted to the trial court. *Sexton v. Omaha Property and Cas. Ins. Co.,* 231 S.W.3d 844, 845 (Mo.App.2007). That record is viewed in the light most favorable to the party against whom judgment was entered, and the nonmoving party is accorded the benefit of all inferences which may reasonably be drawn from the record. *ITT Commercial Finance Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). "The propriety of summary judgment is purely an issue of law." *Id.* As *ITT* explains, Rule 74.04 distinguishes between motions for summary judgment filed by a "claimant" and by a "defending party." *Id.* at 380. A defending party is "one against whom recovery is sought." *Id.;* Rule 74.04(b). Here, Shelter was the defending party.

A "defending party" may establish a right to summary judgment by showing: (1) facts negating any one of the claimant's elements; (2) that the party opposing the motion has presented insufficient evidence to allow the finding of the existence of any one of the claimant's elements; or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support a properly pleaded affirmative defense. *Ameristar Jet Charter, Inc. v. Dodson Int'l Parts, Inc.,* 155 S.W.3d 50, 58–59 (Mo. banc 2005).

## II. Factual and Procedural Background

In April 1998, Beverly Edwards was the named insured in an automobile insurance policy issued by Shelter. The policy included UM coverage. In relevant part, the insuring agreement in that coverage stated:

> **We** will pay damages for **bodily injury** sustained by an **insured** which such **insured** or such **insured's** legal representative is legally entitled to recover from the owner or operator of an **uninsured motor vehicle.** The bodily injury must be caused by accident and arise out of the ownership, maintenance or **use** of the **uninsured motor vehicle**....

(Bold emphasis in original.)[2] The definition of an uninsured motor vehicle in the UM coverage included a hit-and-run motor vehicle, which was defined as "a **motor vehicle** whose owner or operator cannot be identified, and which hits, or causes an ease, or death which results from it." **Insured** included the named insured, Beverly, and her spouse, Bob. **Use** included loading and unloading.

---

1. All references to rules are to Missouri Court Rules (2006).

2. The bold terms were separately defined in the policy. **We** refers to Shelter. **Bodily injury** means "bodily injury, and sickness, dis-

accident without hitting, an **insured** or a **motor vehicle** an **insured** is **occupying."** (Bold emphasis in original.)[3]

In June 2005, the Edwards filed suit against Shelter to recover UM benefits. The petition alleged, *inter alia,* that: (1) Beverly was injured when she fell in a parking lot in April 1998; (2) the area where she fell was covered by a slick substance from a phantom vehicle which caused her to fall; and (3) the driver of the phantom vehicle was negligent because he failed to properly perform maintenance on his vehicle. Shelter denied these allegations in its answer.

In November 2006, Shelter filed a motion for summary judgment. The motion was accompanied by a statement of uncontroverted facts containing 13 paragraphs. In due course, the Edwards filed a response. They admitted the facts contained in 11 of the paragraphs and disputed the facts contained in two paragraphs. The response also included two paragraphs of additional material facts that the Edwards claimed were genuinely disputed. In Shelter's reply, it denied these additional facts and challenged whether they were based upon the Edwards' personal knowledge, as required by Rule 74.04(e). Shelter also argued that the Edwards could not make a submissible case for UM coverage because there was no evidence from which a juror could reasonably infer that the phantom driver's negligence was the proximate cause of Beverly's injury. The parties' submissions to the trial court provided the following undisputed facts for the court's consideration.

The Edwards' lawsuit arose out of a slip-and-fall incident that occurred on the Venture store parking lot located at 3101 S. Glenstone in Springfield, Missouri. Beverly slipped and fell due to a substance on the lot. Beverly had no personal knowledge of what this substance was. It was located on the ground in a parking space. The substance covered an oval area of approximately two feet by four feet. Assuming a vehicle had been parked in the conventional manner, the oval was located toward the front of the space. The substance saturated Beverly's clothing and was a pinkish-red color. It was sticky, greasy and had a strong, soury and oily smell. It was slick. The first time that Bob saw the substance was after Beverly fell. Bob, who had experience as a mechanic, believed that the substance was transmission fluid based upon its appearance and smell. The substance on Beverly's clothing, however, had never been subjected to laboratory analysis. Neither Beverly nor Bob had any personal knowledge of when or how the substance got onto the parking lot.

After reviewing the materials submitted by the parties, the trial court concluded that Shelter's policy did not provide any UM benefits for the incident described in the Edwards' petition. The court entered summary judgment for Shelter, and this appeal followed.

### III. Discussion and Decision

█ In order for the Edwards to prevail on their UM claim against Shelter, they must prove that they are legally entitled to recover damages from the driver of the hit-and-run vehicle. *Bell v. United Parcel Services,* 724 S.W.2d 682, 684 (Mo. App.1987). Legal entitlement to recover requires proof of causal negligence or fault on the part of the uninsured motorist.

---

**3.** Under Missouri law, an insured can be legally entitled to recover damages from the owner or operator of an uninsured motor vehicle "whether or not physical contact was made between the uninsured motor vehicle and the insured or the insured's motor vehicle." § 379.203.1 RSMo (2000).

*Oates v. Safeco Ins. Co. of America*, 583 S.W.2d 713, 716 (Mo. banc 1979); *Kesterson v. Wallut*, 157 S.W.3d 675, 686 (Mo. App.2004).

Viewing the record most favorably to the Edwards, there is sufficient evidence from which a juror could reasonably infer that Beverly slipped on transmission fluid which came from an automobile parked in the Venture lot. A transmission fluid leak from a vehicle can result from many causes, including: (1) a defectively designed or manufactured product; (2) improper maintenance by someone other than the owner or operator, such as a mechanic at a service station; (3) recent damage that was beyond the driver's knowledge or control; (4) a collision with another vehicle in which the driver of the uninsured motor vehicle was not at fault; or (5) negligent maintenance by the owner or operator of the uninsured motor vehicle. Only the last of these would provide the basis for a UM claim.

Even viewed most favorably to the Edwards, there is simply no evidence in the record from which a juror could reasonably infer that the presence of the transmission fluid on the Venture lot was due to negligent maintenance by the owner or operator of an uninsured vehicle as the Edwards alleged in their petition. Such a conclusion could only be based upon speculation, conjecture or surmise, which is insufficient to make a submissible case for UM benefits. *Bell*, 724 S.W.2d at 685. *Bingenheimer v. State Farm Mut. Auto. Ins. Co.*, 196 Or.App. 316, 100 P.3d 1132 (2004), is directly on point. There, the plaintiff was injured in a single-car accident after she lost control of her vehicle due to an oil-like substance on the roadway. *Id.* at 1133. The plaintiff sought to recover UM benefits and alleged that the oil-like substance was deposited on the roadway as a result of the negligence of the driver of a phantom vehicle. *Id.* State Farm moved for summary judgment on the ground that the plaintiff failed to present sufficient evidence that the phantom vehicle was responsible for plaintiff's accident. *Id.* The trial court granted the motion, and that ruling was upheld on appeal. As in Missouri, Oregon requires that an insured must prove that he or she is legally entitled to recover damages from the uninsured motorist in order to recover UM benefits. *Id.* at 1134. That requires proof of a viable tort claim against the responsible party. *Id.* The Oregon appellate court held that summary judgment was properly entered against the plaintiff because "the record here is insufficient to support an inference that [the oil-like substance] came to be on the road surface as a result of the negligence of the phantom vehicle's owner." *Id.* Even when analyzed pursuant to a *res ipsa loquitur* theory of recovery, the plaintiff's UM claim failed:

This record does not provide a legally sufficient basis for concluding that an accident caused by a phantom vehicle leaking an "oil-like substance," albeit a substantial amount of that substance, is of the kind that more probably than not would not have occurred in the absence of negligence. As the Supreme Court recognized in *American Village [Corp. v. Stringfield Lumber and Bldg. Supply]*, "mechanical objects suffer breakdowns every day without someone being negligent." 269 Or. [41] 44, 522 P.2d 891 [(1974)]. Although an owner or operator's negligence could be responsible for a phantom vehicle leaking an oil-like substance, the record does not establish that such negligence is a more likely cause than other possible causes, such as an unknown defect in the vehicle or recent damage to the vehicle that was beyond the driver's knowledge or control. Without any evidence in the record as to the relative probability of a

vehicle leaking an oil-like substance with or without negligence, a jury is without a legally sufficient basis for inferring, based on *res ipsa loquitur*, that negligence of the driver of an alleged phantom vehicle caused plaintiff's injuries.

*Id.* at 1135.

The Edwards contend, however, that *Hale v. American Family Mut. Ins. Co.*, 927 S.W.2d 522 (Mo.App.1996), supports their argument that summary judgment was improperly granted. This Court disagrees. In point of fact, *Hale* actually supports the decision reached here. In *Hale,* the plaintiff was injured when he was struck in the head by a rock that flew through his windshield. *Id.* at 524. The rock came at a low trajectory from the oncoming lanes of traffic. *Id.* at 525. There was a foreign, black substance on each side of this flat rock. *Id.* The plaintiff brought a claim for UM benefits against his insurer under the *res ipsa loquitur* doctrine. The insurer argued that plaintiff's proof was insufficient to support a submission on that theory. *Id.* The western district of this Court disagreed. *Id.* at 526. There was sufficient evidence to support the inference that the rock had come from between the wheels of a dual-wheeled vehicle. *Id.* That is a known danger of such vehicles. *Id.* There was testimony that a careful and prudent driver would check his vehicle for lodged rocks before driving it and would avoid striking a rock of that size in the roadway. *Id.* Thus, there was ample evidence to support the reasonable inference that, more probably than not, the plaintiff in *Hale* had been injured due to the negligence of an uninsured motorist. *Id.* The plethora of specific evidence about the uninsured motorist's negligence adduced in *Hale* stands in stark contrast to the absence of such evidence in this record.

The trial court did not err in granting summary judgment in favor of Shelter. The Edwards' point is denied, and the judgment is affirmed.

PARRISH, P.J., and SCOTT, J., Concur.