# United States Court of Appeals
## For the Eighth Circuit

_____

No. 11-3867
No. 11-3869

_____

West American Insurance Company

*Appellee - Cross Appellant*

v.

RLI Insurance Company

*Appellant - Cross Appellee*

Agency Services Corporation of Kansas, Inc.

*Cross-Appellee*

_____

Appeals from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: September 19, 2012
Filed: November 7, 2012
_____

Before WOLLMAN, BEAM, and LOKEN, Circuit Judges.
_____

LOKEN, Circuit Judge.

While driving in Kansas City, Missouri, Kansas resident Stanley Miller negligently rear-ended a vehicle driven by Melissa Andrade, causing serious personal injuries to Andrade and her passenger, Marion O'Dell-Wilson. Miller was insured under a primary liability policy issued by West American Insurance Company ("West") with a per-occurrence limit of $500,000 and a per-person limit of $250,000, and a separate $1,000,000 umbrella policy issued by RLI Insurance Company ("RLI"). Andrade, her husband, and O'Dell-Wilson (the "underlying claimants") sued Miller in Missouri state court. The parties agreed to binding arbitration, the arbitrator awarded damages totaling nearly $1.35 million, and the awards were reduced to judgments by the state court.

The underlying claimants then commenced a garnishment action to recover their judgments against Miller. West and RLI satisfied those judgments. West commenced this diversity action to recover expenses incurred in defending Miller in the garnishment action, asserting tort claims under Missouri law against RLI for vexatious refusal to pay, bad faith refusal to pay, and prima facie tort, and claims of negligence and negligent misrepresentation against RLI's independent claims agent, Agency Services Corporation of Kansas, Inc. ("ASCK"). West also sought a declaration that it owed no duty to protect RLI in the underlying arbitration. RLI counterclaimed, alleging that, prior to the arbitration, West negligently and in bad faith refused to settle the underlying claims for less than its policy limits. West's response added claims for indemnification and contribution against ASCK.

In resolving the claims asserted by West, the district court first dismissed the vexatious refusal-to-pay and bad faith claims against RLI, concluding that Missouri law does not recognize such claims by a primary insurer against an excess insurer. West does not appeal those rulings. After further proceedings, the court granted summary judgment dismissing West's prima facie tort claim against RLI and West's claims against ASCK. Finally, the district court resolved RLI's counterclaim on cross-motions for summary judgment, concluding that West is not liable for negligent

or bad faith refusal to settle because it fully protected Miller, its insured, by entering into a "high/low" agreement with the underlying claimants prior to the arbitration.

RLI appeals the district court's dismissal of its counterclaim. West cross appeals the district court's dismissal of its claims against ASCK, its prima facie tort claim against RLI, and its affirmative defenses to RLI's counterclaim.[1] Reviewing the district court's rulings *de novo*, see Van Horn v. Best Buy Stores, L.P., 526 F.3d 1144, 1148 (8th Cir. 2008), we reverse the grant of summary judgment dismissing RLI's counterclaim, we decline to rule on the dismissal of West's defenses to that counterclaim, and in all other respects we affirm.

## I. Background

The underlying claimants made multiple offers to settle before filing suit against Miller in 2005 -- for $117,000 in October 2001, and later for the $250,000 per-person policy limits in January 2003, April 2004, and August 2004. West rejected each offer. During discovery after litigation commenced, Miller disclosed that he believed he had excess insurance coverage with RLI but was unable to locate substantiating documents. In April 2005, a West claims manager contacted RLI and,

---

[1]We dismissed initial appeals for lack of jurisdiction because the district court never disposed of West's claim for a declaratory judgment and thus, contrary to the parties' representations, there was no "final decision" within the meaning of 28 U.S.C. § 1291. The district court then dismissed West's declaratory judgment claim *without* prejudice pursuant to the parties' stipulation. We have repeatedly criticized the use of dismissals without prejudice to manufacture appellate jurisdiction in circumvention of the final decision rule. See, e.g., Fairbrook Leasing, Inc. v. Mesaba Aviation, Inc., 519 F.3d 421, 425 n.4 (8th Cir. 2008). At oral argument, counsel for West agreed that the dismissal can be deemed to be *with* prejudice. See Minn. Pet Breeders, Inc. v. Schell & Kampeter, Inc., 41 F.3d 1242, 1245 (8th Cir. 1994). Accordingly, we have appellate jurisdiction. But given this unnecessary waste of judicial resources, no costs will be awarded to any prevailing party for either appeal.

at its direction, ASCK. West's records reflect that ASCK informed West there was a "gap" in Miller's excess coverage at the time of the accident. In fact, Miller's RLI policy then provided $1 million in excess liability coverage.

Some time after October 2005, West and the underlying claimants agreed to arbitrate the claimants' state court claims pursuant to a high/low agreement providing that the maximum amount the underlying claimants could recover in arbitration would be "all sums of money due and owing under any applicable policies of insurance." After entry of judgments on the arbitrator's awards, the underlying claimants petitioned for an award of equitable garnishment, naming as defendants West, Miller, and "Unknown Insurance Companies." See Mo. Rev. Stat. § 379.200. West paid the limits of its policy and defended Miller in the garnishment action. RLI became aware of the proceedings and intervened as a defendant, admitting Miller had an excess policy in force but denying coverage because RLI did not receive timely notice of the underlying claims. During discovery, however, RLI learned that ASCK did receive timely notice of the claims. RLI then satisfied the underlying claimants' judgments. This lawsuit followed.

West alleges that RLI's tortious misconduct and ASCK's false statement that Miller did not have excess coverage caused West the expense of defending the garnishment suit for over a year after it paid its policy limits. In its counterclaim, RLI alleges it was equitably and contractually subrogated to Miller's bad faith refusal-to-settle claims against West, and that West's wrongful refusal of the early settlement offers caused the excess judgments that RLI paid on Miller's behalf. RLI stipulated that the high/low agreement protected Miller from personal liability.

## II.  RLI's Counterclaim (Appeal No. 11-3867)

**A.  A Threshold Choice of Law Issue.**  As the district court and the parties recognized, before considering the merits of RLI's counterclaim for West's allegedly

bad faith or negligent refusal to settle the underlying claims, we must determine whether the counterclaim is governed by the law of Kansas, where Miller purchased the primary and excess policies, or the law of Missouri, where the accident and subsequent litigation occurred. The choice-of-law issue is significant because, under Kansas law, an insurer is liable for breach of contract if it was guilty of either negligence or bad faith in refusing to defend or settle third party claims against its insured, whereas Missouri law allows recovery in tort but only upon proof of bad faith. Compare Bollinger v. Nuss, 449 P.2d 502, 508 (Kan. 1969), with Zumwalt v. Utilities Ins. Co., 228 S.W.2d 750, 753 (Mo. 1950). West argues that the district court erred in applying Kansas law. We review this issue *de novo*, applying the choice-of-law rules of Missouri, the forum State. See Am. Guarantee & Liab. Ins. Co. v. U.S. Fid. & Guar. Co., 668 F.3d 991, 996 (8th Cir. 2012).

The district court first concluded that, because Missouri law characterizes an insurer's bad faith failure to settle as a tort claim, Missouri courts would apply the "most significant relationship" test set forth in § 145 of the Restatement (Second) of Conflict of Laws in resolving this choice-of-law issue. The relevant factors under § 145 are: (1) "the place where the injury occurred"; (2) "the place where the conduct causing the injury occurred"; (3) "the domicil, residence, nationality, place of incorporation and place of business of the parties"; and (4) "the place where the relationship, if any, between the parties is centered." Thompson v. Crawford, 833 S.W.2d 868, 870 (Mo. 1992). Neither party challenges this conclusion. Applying the § 145 test, the district court then concluded that Kansas law applies:

> An excess carrier that has paid the excess judgments is then subrogated to the rights of the insured to bring the bad faith failure to settle claim against the primary insurer. . . .
>
> Miller is a resident of Kansas. If he had not carried excess coverage, West American's alleged failure to settle within policy limits would have injured his financial interests where he resides, in

Kansas. . . . West American allegedly improperly failed to apprise Miller, in Kansas, of any of the settlement offers or their subsequent rejections. . . . While the underlying lawsuit was filed in Missouri, the suit would not have been filed at all, nor would the excess judgments have been entered, if West American had settled the claims.

West American issued Miller an insurance policy in Kansas, and the policy contained provisions required by Kansas law. The insured automobile was located in Kansas. Accordingly, the relationship between Mr. Miller and West American is centered in Kansas. The state of Kansas, therefore, has a greater interest than any other state in the claim because it involves the settlement of claims asserted against a Kansas insured under a Kansas insurance policy.

On appeal, West argues the district court erred in focusing on the relationship between *Miller* and West when it should have analyzed the relationship between *RLI* and West, as Miller is not a party to this lawsuit. But RLI asserts a subrogation claim, seeking to "stand in the shoes" of Miller. The relationship between Miller and West cannot be ignored. West emphasizes that the injury to RLI occurred in Missouri, where the excess judgments were entered. But the duty West owed and allegedly breached was to its insured, Miller, a resident of Kansas, and the injury caused by West's allegedly wrongful refusal to settle was felt in Kansas, not Missouri. West further argues the conduct that caused RLI's injury was the alleged mishandling of the underlying claimants' Missouri lawsuits, and that occurred in Missouri. But RLI's counterclaim focuses on pre-suit settlement negotiations in which West's claims manager in Colorado rejected settlement offers before the underlying claimants filed suit against Miller in Missouri state court. There is no evidence that the pre-suit settlement negotiations occurred in Missouri, and it is undisputed that West failed to advise Miller (a Kansas resident) of the settlement offers. These factors favor application of Kansas law.

Finally, West argues that, all things considered, Missouri has a greater interest in the issues presented by RLI's counterclaim than Kansas. We disagree. Kansas has a significant interest in protecting its residents from liabilities caused by the negligence or bad faith of insurers controlling the defense of third party claims. Bollinger, 449 P.2d at 508. While Missouri undoubtedly has an interest in ensuring that parties to litigation in its courts attempt to settle in good faith, the wrongful conduct giving rise to RLI's counterclaim preceded the Missouri litigation and directly impacted the economic interests of a Kansas insured. In these circumstances, we agree with the district court that the Supreme Court of Missouri would apply Kansas law in resolving RLI's counterclaim.

This conclusion is consistent with our recent decision in American Guarantee, 668 F.3d at 996-1002, a precedent the parties inexplicably failed to address. In American Guarantee, an excess insurer, invoking subrogation principles, claimed that the primary insurer's bad faith refusal to settle resulted in a jury verdict that exposed $17 million of the excess insurer's coverage. Applying Missouri's choice-of-law test from § 145 of the Restatement, we affirmed the district court's decision to apply the law of Missouri, where the accident, settlement negotiations and jury verdict occurred, rather than the law of Washington, where the insured, a nationwide trucking company, had operated its business before becoming insolvent. American Guarantee is distinguishable for two critical reasons. First, the interest of the State of Kansas in this case -- protecting an individual resident of Kansas driving an automobile licensed and insured in Kansas from economic injury caused by the bad faith or negligent refusal of his primary insurer to settle third party claims -- is far stronger than the interest of the State of Washington in American Guarantee -- "resolving a bad faith claim between two [out-of-state] insurers, arising from litigation in Missouri, simply because a dissolved insured was once located in Washington." 668 F.3d at 998-99. Second, the allegedly wrongful refusal to settle in this case occurred before the underlying claimants filed suit in Missouri, a time when West's duty to defend and settle claims against its Kansas insured was paramount. As we observed in American

Guarantee, "the place where an insured feels the economic impact of an excess verdict is the place where an injury occurs for purposes of a Section 145 choice-of-law inquiry." Id. at 997. Here, Miller felt the impact of West's refusal to settle in Kansas, where he resided.

**B. The Merits.** RLI's counterclaim alleged that West wrongfully rejected multiple settlement offers by the underlying claimants prior to the arbitration of their state law claims. Under Kansas law, an insurer "in defending and settling claims against its insured, owes to the insured the duty not only to act in good faith but also to act without negligence." Bollinger, 449 P.2d at 508. This duty arises because of the inherent conflict of interest between an insurer, whose authority to defend third party claims includes determining the amount it will pay to settle, and the insured, whose interest lies in settling the claim within the insurer's policy limits. Because the insurer's maximum liability is fixed by its policy limits whether or not it accepts a settlement offer, "the insurer has a great deal less to risk from [rejecting the offer and] going to trial than does the insured." Id. at 510. To balance these competing interests, the insurer in considering a settlement offer "must give at least the same consideration to the interests of its insured as it does to its own interests." Glenn v. Fleming, 799 P.2d 79, 85 (Kan. 1990). An insurer's liability for breaching this duty by refusing to settle may exceed its policy limits. Bollinger, 449 P.2d at 508.

Like most jurisdictions, Kansas has not recognized an independent duty of care between primary and excess insurers. Thus, RLI's counterclaim turns on whether it may assert a refusal-to-settle claim as subrogee of Miller. Applying Kansas law, the Tenth Circuit has held that an excess insurer is subrogated to the rights of its insured "for the purpose of asserting [a] claim that the [primary insurer] acted in bad faith in failing to settle within its policy limits." Ins. Co. of N. Am. v. Med. Protective Co., 768 F.2d 315, 321 (10th Cir. 1985). Most state courts have adopted this principle. See Nat'l Sur. Corp. v. Hartford Cas. Ins. Co., 493 F.3d 752, 756-57 & n.2 (6th Cir. 2007) (collecting cases). Permitting the excess insurer to assert a subrogated claim

promotes the public interest in the fair and reasonable settlement of lawsuits, a public policy endorsed by the Supreme Court of Kansas.  See Glenn, 799 P.2d at 93.  Like the Tenth Circuit, we conclude the Supreme Court of Kansas would adopt the majority view.  Cf. Md. Cas. Co. v. Am. Family Ins. Grp., 429 P.2d 931, 941 (Kan. 1967).

West argues that the high/low agreement fully protected Miller, its insured, from the results of the arbitration, and therefore neither Miller, nor RLI as subrogee, has a claim against West for more than the policy limits it paid.  In Heinson v. Porter, 772 P.2d 778, 785 (Kan. 1989), where a third party sued to collect a large settlement from the insurer, the Supreme Court of Kansas held that the insurer was not liable for the amount above its policy limits because an insurer's liability, even to an abandoned insured, "is limited to the actual damage suffered by the insured as a result of the insurer's conduct."  West's contention would prevail if Heinson was controlling Kansas law, but the Supreme Court of Kansas revisited this issue in Glenn, 799 P.2d at 82-84, where the insurer rejected a third party's offer to settle for the policy limits; the third party obtained a judgment against the insured for substantially more than the policy limits; the third party signed a covenant not to execute the judgment against the insured; and the insured assigned his rights under the policy to the third party, who filed a garnishment action against the insurer.  Relying on Heinson, the Kansas Court of Appeals affirmed summary judgment for the insurer.  The Supreme Court reversed, expressly overruling "Syllabus ¶ 4" in Heinson, id. at 81, and reaffirming its prior decision that an action against an insurer whose negligent or bad faith refusal to settle within the policy limits results in an excess judgment against the insured "lies, whether or not the insured has paid or can pay an excess judgment."  Id. at 92, quoting Farmers Ins. Exch. v. Schropp, 567 P.2d 1359, 1369 (Kan. 1977) (insured's insolvency does not bar third party's bad faith claim against insurer).

The district court distinguished Glenn because, unlike the insured in that case, "Miller was not forced to bargain away his rights in order to gain protection of his assets."  RLI cannot recover on its counterclaim, the court concluded, "if West

American protected Miller's assets with the high/low agreement." The high/low agreement protected Miller from personal exposure because it limited the underlying claimants' recovery to the maximum amount of insurance coverage available. Therefore, West argues on appeal, it is irrelevant whether it acted in bad faith or was negligent in rejecting the underlying claimants' earlier offers to settle. Neither Miller (its insured) nor RLI (as Miller's subrogee) has a bad faith or negligent refusal-to-settle claim as a matter of law.

The core of West's contention is fundamentally inconsistent with the Supreme Court of Kansas's reasoning in Glenn. That the high/low agreement left Miller with no risk of personal liability should be irrelevant under Kansas law, as the Supreme Court of Kansas has repeatedly held that an action against an insurer whose negligent or bad faith refusal to settle within its policy limits results in an excess judgment against the insured "lies, whether or not the insured has paid or can pay an excess judgment." Glenn, 799 P.2d at 92, quoting Schropp, 567 P.2d at 1369 (insured's insolvency does not bar bad faith claim against insurer).

Moreover, it is sophistry to posit that West protected Miller from the risk created by West's earlier refusals to settle within its policy limits. Miller *protected himself* against most of that risk by purchasing excess liability insurance from RLI. If the underlying claimants had recovered $1.35 million after trial of their state law claims, the Supreme Court of Kansas would follow nearly every other jurisdiction and hold that RLI as subrogee could sue West for RLI's liability as excess insurer, even though Miller had no personal exposure because of the excess policy coverage. Likewise, if Miller and the underlying claimants had settled for $1.35 million using the assignment/covenant device at issue in Glenn, and if RLI had satisfied the settlement, West if guilty of bad faith refusal-to-settle would be liable for the amount above West's policy limits *provided* that Miller's settlement with the underlying

-10-

claimants was "reasonable in amount and entered into in good faith." 799 P.2d at 93.[2] Again, the fact that Miller was not personally at risk because he protected himself with excess insurance would not bar RLI as subrogee from asserting this claim.

Finally, West's contention is inconsistent with the policy concerns animating the Kansas Court's decisions in Bollinger and Glenn. As RLI points out, adoption of this principle would preclude bad faith subrogation claims by excess insurers whenever the insured's liability to a third party is within the coverage provided by the excess policy. But the conflict-of-interest concerns underlying the duty of primary insurers to exercise good faith and due care in evaluating settlement offers are not diminished when the insured is also protected by excess insurance. See Twin City Fire Ins. Co. v. Country Mut. Ins. Co., 23 F.3d 1175, 1179 (7th Cir. 1994). When the primary insurer is faced with a settlement offer at or near its policy limits, it has the same incentive to gamble with someone else's money, either the insured's or the excess insurer's. See Bollinger, 449 P.2d at 510; Nat'l Sur. Corp., 493 F.3d at 757-58. When the primary insurer has control of defending underlying claims, permitting subrogation claims by the excess insurer increases the likelihood of fair and efficient settlement of lawsuits, reducing the premiums charged for excess insurance without increasing the good faith duties of the primary insurer. See Certain Underwriters of Lloyd's v. Gen. Accident Ins. Co. of Am., 909 F.2d 228, 232 (7th Cir. 1990).

---

[2]When a liability insurer has both denied coverage and refused to defend its insured, the insured is left to defend himself against the third party's lawsuit, and his liability exposure may exceed the policy limits. In a device commonly employed, the insured settles the third party's lawsuit for an amount in excess of the policy limits in an agreement providing that the third party may collect its judgment for the amount of the settlement only from the insurer, using an assignment of the insured's rights against the insurer together with a covenant not to execute against the insured. The insured is fully protected, but there is a risk of collusion between the insured and the third party in setting the amount of a settlement that may only be collected from a non-party to their agreement, the insurer. See Glenn, 799 P.2d at 92-93.

-11-

From the standpoint of the policies underlying this doctrine, West did not fully protect Miller from the injury caused by the alleged bad faith or negligent refusal to settle because it did not protect Miller's subrogee, RLI. Because the primary insurer's temptation to place its own interests first in refusing to settle is the same whether the victim is the insured or an excess insurer, the excess insurer "is permitted to step into the shoes of the [insured] and assert [his] implied contractual right against the misbehaving insurer." Twin City Fire Insurance Co., 23 F.3d at 1179; accord Commercial Union Ins. Co v. Med. Protective Co., 393 N.W.2d 479, 482-83 (Mich. 1986). Here, West gambled RLI's money, rather than Miller's, in accepting the underlying claimants' demand for a high/low agreement allowing them to recover the amount "owing under any applicable policies." In these circumstances, we conclude that, as in Schropp, the Supreme Court of Kansas would "see no reason why [the fact that the insured was financially protected] should excuse the insurer from exercising the same good faith it would be expected to exercise, were the insured fully financially [liable]." 567 P.2d at 1369.

For these reasons, we conclude the Supreme Court of Kansas would allow RLI's counterclaim to proceed and therefore the district court's grant of summary judgment must be reversed.[3] We of course express no view as to whether West was guilty of bad faith or negligent refusal to settle; if so, whether that bad faith or negligence caused the injury of which RLI complains (which may include the question whether West made a reasonable effort to cure any adverse effects of its refusal to settle); whether RLI failed to mitigate its damages; and other issues that may arise.

---

[3]West also argues that it is entitled to summary judgment dismissing RLI's counterclaim because RLI wrongfully denied coverage to Miller and therefore is bound by whatever settlement was reached. As the district court recognized, the cases that West cites in support of this argument do not support dismissal of RLI's counterclaim as a matter of law. We therefore decline to affirm summary judgment in West's favor on this alternative ground.

-12-

### III. West's Claims and Defenses (Appeal No. 11-3869)

**A.** In its cross appeal, West first argues the district court erred in dismissing its claims against ASCK for negligence, negligent misrepresentation, and contribution and indemnity -- claims based upon ASCK's erroneous response to West's April 2005 telephone inquiry.

(1) The district court dismissed West's claims for indemnity and contribution because ASCK's action "could not have caused West American's bad faith [refusal to settle] that occurred before ASCK was contacted." As this ruling is factually incontestable, it is summarily affirmed.

(2) The district court dismissed West's claim that ASCK's negligence caused West to incur expenses in the garnishment action on the ground that ASCK, as agent of RLI, owed no duty of care to West. On appeal, West accuses the district court of ignoring the fact that the agency agreement between RLI and ASCK required ASCK to forward notice of claims to RLI. ASCK's alleged failure to perform its contractual duties may give rise to a claim by RLI for breach of contract, but it cannot serve as the basis for West's tort claim. See Hardcore Concrete, LLC v. Fortner Ins. Servs., Inc., 220 S.W.3d 350, 358-59 (Mo. App. 2007); Jack v. City of Wichita, 933 P.2d 787, 790-91 (Kan. App. 1997). The district court also concluded that West did not suffer reasonably foreseeable harm because of ASCK's failure to provide notice to RLI. We agree. Based on the summary judgment record, there is insufficient evidence for a reasonable jury to conclude that the one call from West's claims manager provided ASCK with enough information to recognize that failure to forward the information to RLI would harm West. Nor is there sufficient evidence West reasonably relied on that phone call in negotiating the high/low agreement.

(3) The district court dismissed West's claim of negligent misrepresentation on the ground that West did not rely on the alleged misrepresentation. On appeal, West

-13-

argues there is a genuine issue of material fact whether it proceeded to binding arbitration in reliance on ASCK's misrepresentation of no excess coverage. We agree with the district court that West failed to create a fact dispute because its witnesses could not identify "how West American would have acted differently . . . if it had known there was an RLI umbrella policy in force." In addition, to the extent West incurred additional expense because it believed there was no excess coverage, reliance on one phone call to ASCK as establishing that fact was unreasonable.[4]

For these reasons, we affirm the dismissal of West's claims against ASCK.

**B.** West next argues the district court erred in granting RLI partial summary judgment on West's affirmative defenses to RLI's counterclaim -- comparative fault, estoppel, waiver, and unclean hands. This ruling was part of a pretrial order providing that, if a jury determined the high/low agreement did not exist, RLI as Miller's subrogee could pursue its bad faith claim against West. When RLI subsequently conceded that the high/low agreement existed, the court granted West summary judgment dismissing RLI's counterclaim. Our decision to reverse the grant of summary judgment revives the issue of West's affirmative defenses.

The district court reasoned that, because each of these defenses "has as its factual predicate RLI's misrepresentation to West American (through RLI's agent)," they have no relevance to the question whether Miller, and hence RLI as subrogee, can recover for West's refusal to settle the underlying claims long before the alleged

---

[4]In October 2005, prior to arbitration, counsel for the underlying claimants insisted that the maximum recovery under the high/low agreement be *all* applicable insurance policies. Wary that an excess policy might exist, West's claims manager instructed the attorney retained to defend Miller to limit the terms of the high/low agreement to West's $250,000 per-person policy limits because "we can not agree to any binding agreement for any other party th[a]n ourselves." Miller's attorney failed to comply with that instruction and failed to reduce the agreement to writing.

misrepresentation was made. The court's ruling, as trial of RLI's counterclaim approached, is the kind of trial-simplifying ruling that a district court retains discretion to reconsider until it renders a final decision. As we are remanding RLI's counterclaim for further proceedings, we decline to limit the court's discretion on remand by reviewing the issues raised in Point V of West's Brief on this summary judgment record.

**C.** Finally, West argues the district court erred in dismissing its prima facie tort claim against RLI. The district court observed that, under Kansas law, "the claim does not exist," citing Mid Gulf, Inc. v. Bishop, 792 F. Supp. 1205, 1211 n.2 (D. Kan. 1992). West does not contest that ruling on appeal. Alternatively, examining the issue under Missouri law, the district court concluded that West cannot show "actual intent to injure," which is an element of prima facie tort liability. Porter v. Crawford & Co., 611 S.W.2d 265, 269 (Mo. App. 1980). We agree. If Missouri law governs this tort claim, it requires proof of "malevolent intent," and the Supreme Court of Missouri has observed, "[i]t is difficult to find reported cases where a plaintiff actually has recovered on a *prima facie* tort theory." Overcast v. Billings Mut. Ins. Co., 11 S.W.3d 62, 67 n.4 (Mo. 2000) (emphasis in original). Moreover, as the district court noted, RLI's business interest in limiting its liability justified the initial decision to deny coverage in the garnishment action.

## IV. Conclusion

For the foregoing reasons, we reverse the grant of summary judgment dismissing RLI's refusal-to-settle counterclaim and remand for further proceedings not inconsistent with this opinion. We decline to review the district court's grant of summary judgment dismissing West's affirmative defenses to the counterclaim. In all other respects, the orders and judgment of the district court are affirmed.

_____

-15-