**ESTATE OF Nancy L. NIXON, Plaintiff,**

v.

**GOVERNMENT EMPLOYEES INSURANCE COMPANY, Defendant.**

**Case No. 12–6014–CV–SJ–SOW.**

United States District Court, W.D. Missouri, St. Joseph Division.

June 19, 2013.

---

Rodney A. Ames, Withers, Brant Igoe & Mullennix, P.C., Liberty, MO, for Plaintiff.

James Maloney, Scott David Hofer, Foland, Wickens, Eisfelder, Roper, & Hofer, PC, Kansas City, MO, for Defendant.

## ORDER

SCOTT O. WRIGHT, Senior District Judge.

Before the court is Defendant's Motion for Application of Texas' Law of Comparative Fault (Doc. # 22). For the reasons stated below, the motion is granted.

### I. *Background*

The facts giving rise to plaintiff's claim, as detailed by the parties in their motions, are as follows. On October 15, 2010, Nancy L. Nixon ("Nixon") was travelling west on U.S. Highway 54, a two-lane highway, in Hartley County, Texas, when she attempted to pass a vehicle by entering into the lane of oncoming traffic. According to the Complaint, the vehicle Nixon was attempting to pass sped up, preventing Nix-

on from returning to her original lane. Nixon thereafter collided with a tractor-trailer that had partially pulled onto the highway from a private side road. The injuries Nixon sustained caused her death, and the other vehicle and its driver were never identified.[1]

Nixon was insured by a policy of automobile insurance issued by Government Employee's Insurance Company d/b/a Geico General Insurance Company ("Geico"). The Estate of Nancy L. Nixon ("plaintiff") made a demand on Geico, which Geico denied. Plaintiff then filed a vexatious refusal claim against Geico in state court seeking to recover $200,000 in uninsured motorist coverage for the accident in Texas that resulted in the death of Nixon, a Missouri resident. On February 23, 2012, Geico removed the case to federal court.

## II. *Discussion*

■ Under Geico's policy, plaintiff may recover damages from Geico if it is "legally entitled to recover from the owner or operator of an uninsured motor vehicle or hit-and-run vehicle arising out of the ownership, maintenance or use of that auto." A hit-and-run vehicle is defined therein as a motor vehicle causing bodily injury to the insured with or without physical contact. The policy's coverage therefore meets the basic requirements of the Missouri statute, which compels automobile liability insurance companies to provide uninsured motorist coverage to persons "legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom." Mo. Rev. Stat. § 379.203(1). The statute also requires that insurers cover unidentified vehicles and vehicles causing injury without actual physical contact with the victim. *Id.* Under the statute, an unidentified motorist is deemed to be an uninsured motorist.[2] *Id.;* *Preston v. Am. Family Mut. Ins. Co.,* 325 S.W.3d 485, 486 n. 1 (Mo.Ct.App.2010); *see* MAI § 12.03 [2012 Revision] (the verdict-director submitted against an insurer where the motorist is unidentified). Although plaintiff's recovery may be limited by tort rules, the insurance contract therefore potentially covers damages caused by unidentified motorists who had no actual physical contact with the insured or the insured's vehicle.

■ Missouri courts have interpreted the phrase "legally entitled to recover" in insurance contracts as referring to the insured's (Nixon's) right and ability to recover against the unidentified motorist in tort. *Reese v. Preferred Risk Mut. Ins. Co.,* 457 S.W.2d 205, 208 (Mo.Ct.App.1970). This interpretation is based on the understanding that the purpose of uninsured motorist coverage is to provide "the same protection to the person injured by an uninsured motorist as he would have had if he had been injured in an accident caused by an automobile covered by a standard liability policy." *Byrn v. Am. Universal Ins. Co.,* 548 S.W.2d 186, 188 (Mo.Ct.App.1977); *Webb v. State Farm Mut. Auto. Ins. Co.,* 479 S.W.2d 148, 151 (Mo.Ct.App.1972). Underlying plaintiff's claim for coverage, however, is the contract between Nixon and Geico. As Missouri courts have stated, though, "[u]ninsured motorist insurance cases combine tort liability and contract liability into one action," and, "[t]he obligation of the uninsured motorist to respond in money damages is governed by tort rules and that of the insurer is governed by contract." *Bryan v. Peppers,*

---

1. This is often referred to as a phantom motorist.

2. Hereinafter "uninsured motorist" and "unidentified motorist" will be used interchangeably.

323 S.W.3d 70, 74 n. 1 (Mo.Ct.App.2010); *Gaunt v. State Farm Mut. Auto. Ins. Co.,* 24 S.W.3d 130, 136 (Mo.Ct.App.2000).

■ To be "legally entitled to recover" from an insurer on an uninsured motorist claim in Missouri, a plaintiff must show (1) negligence of the unidentified motorist, (2) causation, and (3) damages. *See Preston v. Am. Family Mut. Ins. Co.,* 325 S.W.3d 485, 486 (Mo.Ct.App.2010); *Edwards v. Shelter Mut. Ins. Co.,* 280 S.W.3d 159, 162 (Mo.Ct.App.2009); *Bryan v. Peppers,* 175 S.W.3d 714, 714 (Mo.Ct.App. 2005). The plaintiff's claim must also be free from substantive limitations on recovery, such as statutes of limitations, or intrafamilial or interspousal tort immunity. *See, e.g., Crenshaw v. Great Cent. Ins. Co.,* 527 S.W.2d 1, 4 (Mo.Ct.App.1975) (Two-year wrongful death statute of limitations prevented insured from recovering from the insurer under contract's UM clause); *Noland v. Farmers Ins. Exch.,* 413 S.W.2d 530 (Mo.Ct.App.1967) (Interspousal immunity prevented insured from recovering from the insurer under contract's uninsured motorist clause). The Court also notes that the insured is not required to obtain a judgment from the uninsured motorist to be entitled to recovery from the insurance company. *Byrn,* 548 S.W.2d at 188; *Hill v. Seaboard Fire & Marine Ins. Co.,* 374 S.W.2d 606, 609 (Mo.Ct.App.1963).

### Choice Of Law

■ The parties disagree about whether Missouri's or Texas' tort rules should apply. Plaintiff argues that Missouri law should determine whether Nixon is "legally entitled to recover" from the unidentified motorist. In support, plaintiff points to Section V of Geico's policy, which contains the policy's choice of law term selecting Missouri law. In the header to Section V is the phrase, "These Conditions Apply to All Coverages in This Policy." Plaintiff argues that this phrase clarifies that the parties intended Missouri law to determine Plaintiff's entitlement. However, the Court finds that this phrase merely indicates that Missouri law governs the interpretation the policy's uninsured motorist coverage. It does not suggest that Missouri law also applies to determine the existence or amount of that coverage. The existence and amount of that coverage, as is clearly stated in the policy, is subject to the insured's "legal entitlement to recover" from an uninsured or unidentified motorist. Alternatively, Plaintiff argues the policy is "silent[ ] at best" on the subject of whether Missouri or some other law should apply, and therefore the ambiguity should be resolved in favor of the insured. The Court finds that the policy's "silence" does not create an ambiguity that must be construed in favor of the insured. Missouri courts have held for decades that the phrase refers to the fault of the uninsured or unidentified motorist in tort. Accordingly, the tort rules that limit an insured's recovery have been applied to the facts of each case. *See Crenshaw,* 527 S.W.2d at 4; *Noland,* 413 S.W.2d at 530. Similarly, choice of law rules will determine an insured's recovery, where applicable. *See Byrn,* 548 S.W.2d at 188 (applying Iowa's guest statute to determine that plaintiff was not legally entitled to recover from the uninsured motorist or the defendant insurer); *Protective Cas. Ins. Co. v. Cook,* 734 S.W.2d 898 (Mo.Ct.App.1987). Plaintiff argues that the Court's interpretation means that an insured's ability to recover from an insurer would change as the insured travelled from state to state. However, the case law is clear that a plaintiff's coverage is different according to the facts of each case. In *Noland,* for example, the plaintiff was the passenger of a car struck from behind by an uninsured motorist who happened to be her husband. The husband was an uninsured driver. Under the

terms of the insurance policy, however, the insurance company would pay all sums which the owner or operator of an uninsured motor vehicle would be "legally responsible to pay as damages to the insured." *Noland,* 413 S.W.2d at 532. The court found that the husband was immune from liability under Missouri law and precluded the plaintiff's recovery from the insurer. *Id.* As mentioned above, the underlying purpose of uninsured motorist coverage is to provide the injured person with the same protection it would have been given had the motorist tortfeasor been insured. Thus, the victim's ability to recover will change from state to state and according to the facts of each case.

As stated, the parties disagree as to which states' law should apply. Geico urges the Court to apply Texas law. If Texas law applies, plaintiff's recovery may be barred under two separate theories. First, Nixon's contributory negligence in attempting pass the vehicle in front of her is disputed by the parties. Texas is a modified comparative negligence state, meaning that a plaintiff may not recover from a defendant if she was more than 50% at fault. Tex.Code. Ann. § 33.001. By contrast, Missouri is a pure-comparative negligence state, allowing a plaintiff to recover damages even if she is 99% at fault. *See Gustafson v. Benda,* 661 S.W.2d 11 (Mo.1983) (en banc). Second, the parties appear to agree there was no actual physical contact between the unidentified motorist and Nixon's vehicle. Texas' Insurance Code § 1952.104(3) requires "actual physical contact" between the uninsured or hit-and-run vehicle and the insured before the insured can recover under UM coverage. While, in Missouri, insurers are required to cover damages from accidents that occur without actual physical contact between the uninsured motor vehicle and the insured, and Nixon's policy included these requirements.[3] Mo.Rev.Stat. § 379.203.1.

■ In this federal diversity action, the Court must apply the forum state's choice-of-law rules. *Prudential Ins. Co. v. Kamrath,* 475 F.3d 920, 924 (8th Cir.2007); *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Missouri has adopted the "most significant relationship" test found in the Restatement (Second) of Conflict of Laws to determine which state's law applies. *Kennedy v. Dixon,* 439 S.W.2d 173, 184 (Mo.1969) (en banc). It is important to note that the factors considered in the "most significant relationship test" depend on whether the claim is based in contract or tort. *Compare Goede v. Aerojet Gen. Corp.,* 143 S.W.3d 14, 24–25 n. 6 (Mo.Ct. App.2004) (citing Restatement (Second) Conflict of Laws § 145 and listing factors to consider in the choice of law analysis for torts), *with Armstrong Bus. Serv., Inc. v. H & R Block,* 96 S.W.3d 867, 872 (Mo.Ct. App.2002) (citing Restatement (Second) Conflict of Laws § 188 and listing factors to consider in the choice of law analysis for contracts). Plaintiff appears to argue that the claim is based in contract, while Geico contends the claim sounds in tort. Because determining whether Nixon is "legally entitled" to recover from the uninsured motorist implicates tort law, *see Byrn,* 548 S.W.2d at 188 (citing *Noland,* 413 S.W.2d 530, 532 (Mo.Ct.App.1967)), the Court will apply the factors set forth in Section 145 of the Restatement (Second) Conflict of Laws in determining which

---

**3.** The Court's inquiry on this motion is limited to determining whether Texas law applies, and it does not purport to adjudicate the merits of the dispute or resolve the apparent conflict between the policy and Texas law regarding accidents caused by unidentified motorists without actual physical contact.

state's law has the most significant relationship. The factors to be considered under Section 145 are: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered.[4]

Subsections (a) and (b) of § 145(2) refer to the place where the injury and the conduct causing the injury occurred. Here, both the injury and the conduct allegedly causing the injury occurred in Texas. As for (c), the unidentified driver's place of residence is unknown, making a consideration of the "residence ... of the parties" impossible. Section (d) is likewise irrelevant because, as the comments explain, it contemplates a pre-existing relationship between the parties, and here there was no relationship between Nixon and the unidentified motorist prior to the accident. Restatement (Second) of Conflict of Laws § 145 cmt. e (1971) ("When there is a relationship between the plaintiff and the defendant and when the injury was caused by an act done in the course of the relationship, the place where the relationship is centered is another contact to be considered"). Thus, under § 145(2)(a) and (b), Texas has the more significant contacts with the occurrence and the parties. Here, Nixon's injury, and the conduct that allegedly caused that injury, both occurred in Texas. Texas has an interest in regulating the tortious conduct of motorists that occurs within its borders, and an interest in protecting the victims of such conduct. By contrast, Missouri's only contact with the issue is Nixon's status as a Missouri resident. Therefore, Texas law applies to determine whether Nixon has a legal right to recover from the unidentified driver.[5]

## III. *Conclusion*

Accordingly, it is hereby

ORDERED, that Plaintiff's Motion for Application of Texas' Law of Comparative Fault (Doc. # 22) is granted. It is further

ORDERED that the parties shall meet within thirty (30) days of the date of this Order to discuss settlement. Within ten (10) days following the settlement conference, the parties shall file a joint certification with the Court stating that the conference has taken place and informing the Court of the status of negotiations. If, following the settlement conference, the parties believe the intervention of the Court would be helpful in reaching settlement, they should contact Kelly McIlvain, Division SOW Courtroom Deputy, (816)

---

**4.** The parties to be considered for the purposes of the choice of law analysis should be the parties to the accident, not the parties to the suit. *See West Amer. Ins. Co. v. RLI Ins. Co.,* 698 F.3d 1069, 1073 (8th Cir.2012) (applying Missouri law).

**5.** Plaintiff argues that "the principal location of the insured risk is given greater weight than any other single contact in determining the state of applicable law provided that the risk can be located in a particular state." *Egnatic v. Nguyen,* 113 S.W.3d 659, 665 (Mo. Ct.App.2003) (internal quotations omitted). Although Egnatic involved an uninsured motorist claim, the choice of law inquiry was necessary because the insured had changed her residency to another state and had failed to pay her premiums. Thus the question was what law should apply to determine whether the policy had been cancelled or reinstated. The inquiry was not employed to determine the tort law that would apply to the accident itself. The principle that the location of the insured risk is the most important contact is therefore inapplicable where the choice of law question relates not to the insurance contract, but to the question of the insured's legal entitlement to recovery from an unidentified motorist in tort.

512–5744, to request such intervention. It is further

ORDERED that should the parties fail to reach a settlement, the Court will have the Clerk of the Court reassign the above-captioned case to another judge for trial disposition.